SCUDI & AYERS
Morgan J.C. Scudi SBN 147942
Matthew J. Landa SBN 297513
5440 Morehouse Drive, Suite 4400
San Diego, CA 92121
(858) 558-1001
858-558-1122 (fax)
Attorneys for ROQUE "ROCKY" DE LA FUENTE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION LOS ANGELES

| | |
|---|---|
| Roque "Rocky" De La Fuente;<br><br>Plaintiff,<br><br>v.<br><br>Alex Padilla, California Secretary of State;<br><br>Defendant.<br>_____ | CASE NO. 2:16-CV-03242-MWF-GJS<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff, Roque "Rocky" De La Fuente, brings this Motion for a Preliminary Injunction and Temporary Restraining Order. Plaintiff seeks a determination that §§8400 and 8403 of the California election statutes are unconstitutional, such that these provisions require any Independent Presidential Candidate seeking access to the presidential ballot in California for the November 2016 elections to file petitions with 178,039 signatures within a 105-day period. As argued herein, Plaintiff respectfully requests a preliminary injunction enjoining the Secretary of State from enforcing §§8400 and 8403 of the California election statutes against Plaintiff, and from printing ballots to be used in the general election on November 8, 2016 in California without Plaintiff's name on it as a candidate for President of the United States.

1

## I.   FACTUAL SUMMARY

1. Plaintiff, Roque "Rocky" De La Fuente is a citizen of the United States and is registered with the Federal Election Commission as a presidential candidate. Plaintiff is a well-known business owner who meets the qualification prescribed in Article 2, Section 1 of the United States Constitution for election to the office he seeks in that he is a natural-born citizen of the United States, is over the age of 35, and has been a resident within the United States for 40 years. Plaintiff is seeking access to the 2016 Presidential ballot in California by circulating nominating petitions pursuant to California Election Code §8400.

2. Defendant, Alex Padilla, is the Secretary of State of California and is the supervisor and director of all election matters in California.

3. The State of California is responsible for the statutory scheme in question.

4. Plaintiff has hired a campaign staff and is in the process of seeking compliance with §§8400-8409 of the California Election Code.

5. The 2016 Presidential election will take place on November 8, 2016.

6. The State of California and its counties will begin preparation for the election before the election date and will soon start printing the ballots to be used in the election.

## II.   LEGAL STANDARD FOR INTERIM INJUNCTIVE RELIEF

The primary purpose of a preliminary injunction is to preserve the *status quo* until a court can make a final determination on the merits of the action. *See Continental Baking Co. v. Katz*, 68 Cal. 2d 512, 67 Ca. Rptr. 761, 439 P.2d 889 (1968). A temporary restraining order ("TRO") is properly granted on *ex parte* notice in order to maintain the *status quo* or to prevent irreparable injury pending a hearing on the Application for a preliminary injunction. Code Civ. Proc., Section 527(c); see also 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, Section 286, p. 27. A plaintiff seeking a TRO and/or preliminary injunctive relief must establish that A) he is likely to succeed on the merits; B) he is likely to suffer irreparable harm in absence of preliminary relief; C) the balance of equities tips in his favor; and D) an injunction is in the public interest.

See *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

**A.   Plaintiff is likely to succeed on the merits because he satisfies both the "serious questions" standard and the "likely to succeed" standard**

Plaintiff satisfies both the "serious question going to the merits" and the "likely to succeed on the merits" standards used in considering issuance of a preliminary injunction when proper application of the three factors set out in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), is undertaken.[1] In *Winter*, the Supreme Court established that a plaintiff must show that he is likely to succeed on the merits for a court to grant a preliminary injunction. *Winter*, 555 U.S. at 20. However, subsequent opinions rendered in the Ninth Circuit have noted that *Winter* does not discuss the continuing validity of the "sliding scale" approach employed by the Ninth Circuit and other circuit courts. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. Consequently, the sliding scale approach permits a court in the Ninth Circuit to issue a preliminary injunction in a scenario where the likelihood of success is such that "*serious questions* going on the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Alliance for the Wild Rockies*, 632 F.3d 1127, 1132; *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (emphasis added).

The Ninth, Seventh, and Second Circuits use the sliding scale approach, and have determined that the lessened "serious question" standard is still applicable in light of *Winter*. See *Alliance for the Wild Rockies*, 632 F.3d at 1134-5; *Hoosier energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009); *Nken v. Holder*, 556 U.S. 418 (2009). The Ninth Circuit has held that questions regarding

---

[1] As discussed in Section 2, the three Anderson factors are where a court must 1) evaluate the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments; 2) identify the interests advanced by the State as justifications for the burdens imposed by its rule; and 3) evaluate the legitimacy and strength of each asserted state interest and determine the extent to which those interests necessitate the burdening of the Plaintiff's rights.

3

contractual claims, and copyright claims constitute "serious questions" under the preliminary injunction sliding scale approach. See *Alliance for the Wild Rockies*, 632 F.3d at 1136; *Gershwin v. Whole Thing Co.*, No. CV 80-569, 1980 U.S. Dist. LEXIS 16465, at *11-12 (C.D. Cal. Mar. 10, 1980). As presented herein, Plaintiff will be able to satisfy both the "serious questions" standard and the heightened "likely to succeed on the merits" standard.

**1.     "Serious Questions" Standard**

Plaintiff presents "serious questions" sufficient to satisfy the sliding scale approach used by the Ninth Circuit because a state law depriving citizens of their Constitutional rights poses a serious question worthy of litigation, as the rights protected by the Constitution are fundamental for the preservation of a democracy. The right to vote, the right to associate for political purposes, and the right to be a political candidate are fundamental Constitutional rights protected by the First and Fourteenth Amendments. See *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224 (1989); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986); *Anderson v. Celebreze*, 460 U.S. 780, 787 (1983). First Amendment rights are implicated whenever a state action imposes a barrier to the free exercise of the voting franchise. Such a barrier does not have to wholly prevent voters from exercising a First Amendment right to be found unconstitutional, but a "[First Amendment] right is burdened when the state makes it more difficult for these voters to cast ballots." *See Morlinari v. Bloomberg*, 564 F.3d 587, 604 (2nd Cir. 2009). The First Amendment creates an open marketplace where ideas, particularly political ideas, may compete without government interference. *See N.Y. State Bd. Of Elections v. Lopez Torres*, 552 U.S. 196, 208 (2008).

Plaintiff poses "serious questions" because the issue at hand concerns violations of constitutionally protected rights essential for the proper functioning of a democracy. The ability for a free people to express their opinion via the ballot box and enhance the diversity in the marketplace of ideas safeguards the principle that a democratic

government is ultimately beholden to its citizens. As such, the issues Plaintiff brings before the court are of the utmost importance as they concern questions regarding the very foundations of our system of government, and certainly pose more serious questions than contractual and intellectual property disputes.

**2. "Likely to Succeed on the Merits" Standard**

Plaintiff also meets the heightened "likely to succeed on the merits" standard espoused in *Winter* because, on application of the three factors set out in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), the California ballot access statute is unconstitutional. In determining whether a ballot access law violates the First and Fourteenth Amendments, a court must 1) evaluate the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments; 2) identify the interests advanced by the State as justifications for the burdens imposed by its rule; and 3) evaluate the legitimacy and strength of each asserted state interest and determine the extent to which those interests necessitate the burdening of the Plaintiff's rights. Id.

a. <u>First Anderson Factor</u>

The character and magnitude of the asserted injury to protected rights are great because the California ballot access statute limits Plaintiff's First and Fourteenth Amendment rights of expression and speech by requiring Plaintiff to expend considerable time, energy, and money to meet one of the most restrictive ballot access requirements in the country.[2] The concept of "liberty" assured by the Due Process Clause of the Fourteenth Amendment embraces those rights and freedoms which are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937) (citation omitted). Among these most fundamental rights and freedoms are those that derive from the First Amendment, including the freedom of speech and the freedom "to engage in association for the

---

[2] Of the other 49 states, signature requirements range from 250 (in Tennessee) to 119,316 (in Florida), with the mean of all 50 states plus DC being approximately 11,695 after removing the outliers of Florida and California (the only states with a signature requirement of over 100,000)

advancement of beliefs and ideas." *Gitlow v. New York*, 268 U.S. 652, 666 (1925); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958).

California's ballot access statute is the most restrictive statute in the country because it requires an independent candidate to gather signatures equaling 1% of the total number of registered voters, equal this year to 178,039 signatures. See California Election Code §8400. This ballot access statute for independent Presidential candidates burdens two distinct and fundamental rights. First, it burdens the Plaintiff's fundamental right to run for political office. See *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983) (finding that Ohio's ballot access law preventing plaintiff from appearing on the ballot diminishes a candidates' First Amendment rights of expression and association). Here, Plaintiff has undertaken a tremendous effort to mobilize staffers across the country in order to meet several requirements imposed by statute statutes for ballot access and to promote his message to the electorate, yet the California statute imposes a uniquely prohibitory hurdle keeping Plaintiff's name from appearing on the ballot.

The signature requirement also burdens "two different, although overlapping kinds of rights- the rights of individuals to associate for the advancement of political beliefs, and the right of qualified voters regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). The Supreme Court has recognized that "it is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." *Lubin v. Panish*, 415 U.S. 709, 716 (1974). Additionally, the right to vote is "heavily burdened" if that vote may be cast only for major party candidates at a time when other parties or other candidates are "clamoring for a place on the ballot." *Lubin v. Panish*, 415 U.S. 709, 716 (1974); *Williams v. Rhodes*, 393 U.S. 23, 31 (1968).  As has been evident in the recent election cycle, many voters are increasingly frustrated with their limited choices for political office. Onerous state statutes, such as California's signature requirement, contribute to this problem.

At least one other court has ruled that an overwhelmingly high signature requirement is tantamount to an unconstitutional constraint on the manner in which a State regulates a federal election. *Green Party of Ga. v. Kemp*, 2016 U.S. Dist. LEXIS 34355, *74, 2016 WL 1057022 (N.D. Ga. Mar. 17, 2016) provides persuasive authority where the court determined that Georgia's requirement of 50,000 signatures for minor party ballot access imposed an unconstitutional requirement infringing upon plaintiff's First and Fourteenth Amendment rights. In *Green Party of Ga.*, the requirement of 50,000 signatures was found to place an extreme financial burden on those seeking ballot access as the costs associated with collecting the requisite amount of valid signatures could generate costs of up to $350,000. See id. at *18 (finding that candidates must generally collect a substantially higher number of "raw" signatures in order to ensure that they reach the necessary threshold of "valid" signatures, since "raw" signatures may be invalidated for a number of different reasons).

California's 178,039 signature requirement poses a higher financial hurdle than the Georgia statute deemed to be unconstitutional in *Green Party of Ga*. In addition to having a signature requirement more than three times the number required by Georgia, California also restricts signature gathering to a 105-day window in which to procure signatures. Cal. Elec. Code 8406. This limited time frame is generally associated with even higher cost because petition gathering companies increase their rates for a "rush" job, driving up the already high cost of meeting the prohibitively high signature requirement.

b.   <u>Second Anderson Factor</u>

California must identify and evaluate the precise interests put forth by its signature requirement statute and provide concrete evidence that the problem addressed by the statute is legitimate. With respect to ballot access statutes, the Supreme Court has consistently held that states have "a legitimate interest in regulating the number of candidates on the ballot… to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong

plurality, of those voting, without the expense and burden of runoff elections." *Bullock v. Carter*, 405 U.S. 134, 145 (1972).

A court may not accept at face value any justification a state may give for its practices but must instead "identify and evaluate the precise interest put forward by the State as justifications for the burden imposed by the rule." *Reform Party of Allegheny Cty. v. Allegheny Cty. Dep't of Elections*, 174 F.3d 305, 315 (3d Cir. 1999) (quoting *Anderson*, 460 U.S. at 789); *accord Libertarian Party of Ohio v. Blackwell*, 462 F.2d 579, 593 (6th Cir. 2006) ("Reliance on suppositions and speculative interests is not sufficient to justify a severe burden on First Amendment rights."); *McLain v. Meier*, 637 F.2d 1159, 1165 (8th Cir. 1980) ("The remote danger of multitudinous fragmentary groups cannot justify an immediate and crippling effect on the basic constitutional right to vote for a third party candidate."). Even an otherwise legitimate state concern cannot be accepted without evidence that the problem the state is asserting is real. See *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 457 (2008). Aside from the state presenting additional interests and compelling evidence supporting these interests, the aforementioned interests should be subject to strict scrutiny, as discussed in the third *Anderson* factor.

c. <u>Third Anderson Factor</u>

The state interests put forward by California as justifications for the burden imposed by the high signature requirement do not pass Constitutional muster as the statute is not narrowly tailored to meet the state interest of seeking an efficient and orderly elections process. When an election law imposes a severe burden to plaintiff's fundamental rights, strict scrutiny applies. *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008); *Green Party of Ga. v. Kemp*, 2016 U.S. Dist. LEXI 34355, *42 (N.D. Ga. Mar. 17, 2016). Because California's petition signature requirement requires a citizen to meet the highest signature requirement in the country to partake in a constitutionally protected activity, strict scrutiny applies and the statute must be narrowly tailored to advance a compelling state interest. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (where a law

8

places "severe" burdens on First and Fourteenth Amendment rights, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" (quoting *Norman v Reed*, 502 U.S. 279, 289 (1992)). The Supreme Court has provided further guidance on the topic by stating that "if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.'" *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972) (quoting *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)); *accord Ill. State Bd. Of Elections*, 440 U.S. 173, 185 (1979) ("we have required that States adopt the least drastic means to achieve their ends… where restrictions on access to the ballot are involved").

States are able to achieve the goals of preventing clogging of its election machinery, avoiding voter confusion, and assuring that the winner is the choice of a majority or strong plurality without the expense and burden of runoff elections by lowering the signature requirement to 5,000 signatures. Richard Winger, a renowned ballot access expert, has provided data that states requiring more than 5,000 signatures for ballot access have never had a crowded general election ballot. See Winger Affidavit at 3. There has not been a single instance when more than six candidates or parties successfully completed the petition when the statute requires, at minimum, 5,000 signatures when observing a data set comprising every instance where a state held a presidential general election and used a government-printed ballot. See Winger Affidavit at 4. Therefore, California's excessively high signature requirement only serves to impose an extreme financial burden on independent candidates seeking to have their name place on the ballot because California's interests in promoting an orderly and efficient election can be met by lowering the signature requirement from 178,039 to 5,000.

**B.** **<u>Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief</u>**

Unless this court promptly acts, plaintiff will lose an opportunity to participate in an upcoming election, constituting an irreparable harm for which no alternate remedy exists other than an injunction. "No damages or other compensation can compensate for a missed election." *Duke v. Connell*, 790 F. Supp. 50, 52 (D.C. R.I. 1992) See also *Libertarian Part of Ohio v. Brunner*, 567 F. Supp. 1006, 1014 (S.D. Ohio 2008) (concluding that "denial of access to the ballot" constitutes irreparable harm). A presumption exists that any loss in First Amendment rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976). The California statutory requirement of 178,039 signatures functions as a deprivation of plaintiff's right to participate in the political process by imposing an overwhelmingly burdensome petitionary requirement on an Independent presidential candidate. The requirement acts as a bar to ballot access by forcing candidates to spend a significant amount of time, money, and resources to satisfy the signature requirement. Furthermore, other courts have agreed that an overwhelmingly high signature requirement constitutes a deprivation of Constitutional rights and have ruled to lower their respective States' signature requirements. *See, e.g.*, *Citizens to Establish a Reform Party in Ark. v. Priest*, 970 F.Supp. 690, 691, 698-99 (E.D. Ark 1996) (invalidating a requirement of 21,505 signatures to form a new party); *Libertarian Party of Ohio*, 462 F.3d at 595 (invalidating an early petition deadline requiring 32,290 signatures); *Nader v. Brewer*, 531 F.3d 1028, 1031 (9th Cir. 2008) (invalidating Arizona's independent Presidential petition procedure requiring 14,694 signatures due in June); *McLain v. Meier*, 637 F.2d 1159, 1161, 1170 (8th Cir. 1980); *Green Party of Ga. v. Kemp*, 2016 U.S. Dist. LEXIS 34355, *18, 2016 WL 1057022 (N.D. Ga. Mar. 17, 2016) (invalidating a requirement of over 50,000 signatures for minor political parties and independent candidates); *Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486 2015 U.S. Dist. LEXIS 96637, (E.D. Pa. 2015) (invalidating requirement of over 21,775 signatures for minor party ballot access).

**C.  The Balance of Equities Tips in Favor of Plaintiff**

A temporary injunction should be granted as the balance of equities tip in favor of Plaintiff. When determining whether the issuance of an injunction is proper, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Will of Gambell*, 480 U.S. 531, 542 (1987). Defendants' interest in upholding the statutory signature requirement is to maintain a practical and orderly ballot. See *Bullock v. Carter*, 405 U.S. 134, 145 (1972). However, as previously mentioned, Defendants will suffer no harm if relief is granted because Defendants' sole interest in keeping a manageable ballot will be preserved with a reasonable signature requirement of 5,000. See Winger Affidavit at 8. Denial of a timely preliminary injunction will cause Plaintiff irreparable harm as he will not have his name printed on the ballot in the upcoming election, effectively depriving him of his constitutionally protected rights. Therefore, a lowered signature requirement would best serve the state's interest while allowing Plaintiff to fully participate in the electoral process.

**D.    Injunction is in the Public Interest**

Granting a preliminary injunction is in the public interest as an injunction will serve to enhance the political process by providing voters with a greater variety of choices reflecting the varied and diverse viewpoints held by the electorate in California. The Supreme Court has noted the important role third parties have played in the development of the country in stating, "The States' interest in screening out frivolous candidates must be considered in light of the significant role that third parties have played in the political development of the Nation. Abolitionists, Progressives, and Populists have undeniably had influence, if not always electoral success." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979). Here, Plaintiff seeks to further the political dialogue across the country and provide an alternative viewpoint from those of the major political parties. Hence, a preliminary injunction would be in the

public interest and the populace would be better able to support a candidate that better represents their views.

### III. Conclusion

For the reasons stated in Plaintiff's Application for a Temporary Restraining Order, this Memorandum, and the Complaint, the court should grant Plaintiff's application.

Respectfully submitted,

SCUDI & AYERS, LLP

By: /*Signature*/