SCUDI & AYERS, LLP
Morgan J.C. Scudi (SBN 147942)
Lucas I. Mundell (SBN 310367)
5440 Morehouse Drive, Suite 4400
San Diego, California 92121
Phone: (858) 558-1001
Fax: (858) 558-1122
Lucas@RDLFG.com

Attorneys for Roque "Rocky" De La Fuente

| | |
|---|---|
| ROQUE "ROCKY' DE LA FUENTE,<br><br>                          Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA and ALEX PADILLA, CALIFORNIA SECRETARY OF STATE,<br><br>                          Defendants. | CASE NO. 2:16-cv-03242-MWF-GJS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PRAYER FOR COMPENSATORY DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 6, 2017<br>Time:       10:00 a.m.<br>Judge:    Hon. Michael W. Fitzgerald<br>Loc.  Courtroom 5A, 1st St. Courthouse, Los Angeles, CA |

Plaintiff ROQUE "ROCKY" DE LA FUENTE hereby respectfully opposes Defendant's Motion to Dismiss Plaintiff's Prayer for Compensatory Damages, and submits this Memorandum of Points and Authorities in support.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff, Roque "Rocky" De La Fuente is a citizen of the United States who ran for the office of President of the United States in the 2016 election.  Mr. De La Fuente made every reasonable effort to appear on the Presidential ballot in California, as he appeared on the ballot in 20 other states and appeared as a write-in candidate in 16 others .  On May 11, 2016, Mr. De La Fuente initiated an action in the U.S. District Court for the Central District of California under 42 U.S.C. § 1983 to challenge the constitutionality of §§ 8400 and 8403 of the California Elections Code. Per these provisions an independent presidential candidate seeking to have his name printed on the November 2016 General Election ballot in California must submit the signatures of at least one percent of the number of California voters (178,039 signatures) in the last General Election.  Cal. Elec. Code §§ 8400, 8403.  Mr. De La Fuente contends that this requirement violates the Elections Clause, Privileges and Immunities Clause, First Amendment, and Fourteenth Amendment of the United States Constitution.

270 electoral votes are required to win the presidential election.   California contributes 55 electoral votes, or just over 20% of the electoral votes required to win.  California holds over 10% of all electoral votes available nationwide.   When the 2016 California ballots were printed without Mr. De La Fuente's name, it proved to be a devastating and unconstitutional blow to Mr. De La Fuente's nationwide campaign.

Presidential campaigns are extremely costly endeavors and Mr. De La Fuente has spent exhaustive amounts of money in support of his campaigning efforts in California. If, after such drastic expenditure, Mr. De La Fuente is unconstitutionally procedurally barred from the California Presidential ballot, he will have suffered severe financial injury directly at the hands of the Defendants.

1   II.    THE LEGAL STANDARD

2          A plaintiff in federal court is only required to assert "notice pleading" or the

3   allegation of sufficient facts to put the opposing side on notice why they are being sued.

4   Fed. R.Civ. P. Rule 8.  When ruling on a motion to dismiss, "[a]ll allegations of material

5   fact are taken as true and construed in the light most favorable to the non-moving party."

6   *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

7   Further, reasonable inferences can be drawn from the Complaint for the Court to

8   consider in its decision to deny Defendant motion.  See. *Youngberg v. Bekins Co.*, 930

9   F.Supp. 1396 (E.D. Cal. 1996).

10         Notably, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

11  is generally limited to the "4 corners of the pleading." *Hal Roach Studios, Inc. v. Richard*

12  *Feiner and Company*, 896 F.2d 1542, 1555, fn. 12 (9th Cir. 1989).  Dismissal under Rule

13  12(b)(6) is proper only if "it appears beyond doubt that the plaintiff can prove no set of

14  facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355

15  U.S. 41, 45-6 (1957); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir.

16  1994).

17

18  III.   ARGUMENT

19
                "As everyone knows, the Eleventh Amendment is a mess. It is the home of
20          self-contradiction, transparent fiction, and arbitrary stops in reasoning.
            Any hope of doctrinal stability is undermined by shifting paradigms, as the
21          Eleventh Amendment is inconsistently conceptualized as a form of
            sovereign immunity, as an exception to federal jurisdiction, and as a
22          structural constraint on the powers of the national government."[1]

23         The sole issue at hand is whether or not Plaintiff is permitted to seek compensatory

24  damages from Defendant Padilla for his  violations of Plaintiff's constitutional rights.

25  Defendant invokes Eleventh  Amendment immunity in an effort to shield himself against

26

27         [1]Jeffries, "In Praise of the Eleventh Amendment and Section 1983", 84 Va. L. Rev.

28  47 (1998).

his constitutional violations.  Unfortunately for those individuals whom willfully violate federal rights of a party under the color of law, Eleventh Amendment immunity against compensatory damages does not apply in the case at hand.

The Civil Rights Act of 1871, also known as the "Ku Klux Klan Act", was passed by the 42nd United States Congress and signed into law by President Ulysses S. Grant on April 20, 1871 for the explicit purpose to, "enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes."  Civil Rights Act of 1871, preamble.  Section One of Act states:

> Be it enacted…, That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress; such proceeding to be prosecuted in the several district or circuit courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the [Civil Right Act of 1866], and the other remedial laws of the United States which are in their nature applicable in such cases.  Civil Rights Act of 1871 § 1.

As interpreted by modern case law, this section of the Act was intended to afford victims of "constitutional torts" compensation via monetary damages; the United States Supreme Court in Monell v. Dept of Social Services stated that "[s]ection 1 [of the Civil Rights Act of 1871] without question could be used to obtain a damages judgment against state or municipal officials who violated federal constitutional rights while acting under color of law.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 682 (1978).

Weeks after Monell, the United States Supreme Court spoke to the applicability and boundaries of Eleventh Amendment immunity in Butz v. Economou.  Butz v. Economou, 438 U.S. 478 (1978).  While Butz was primarily focused on the immunity of a federal official charged with violation of Plaintiff's constitutional rights, the Court was explicit about its applicability to state officials.  Amongst a muddy and convoluted legal conversation, Butz provided some clarity, "[f]ederal officials will not be liable for mere

mistakes in judgment, whether the mistake is one of fact or one of law. But there is no substantial basis for holding that executive officers generally may with impunity discharge their duties in a way that is known to them to violate the United States Constitution or in a manner that they should know transgresses a clearly established constitutional rule. The principle should prove as workable in suits against federal officials as it has in the context of suits against state officials." Butz, at 507.  "It is untenable to draw a distinction for purposes of immunity law between suits brought against state officials under 42 U.S.C. § 1983 and suits brought directly under the Federal Constitution against federal officials." Id. at 504.  Having aligned State and Federal officials in the instance of Constitutional violations, the Butz Court then turned to a consideration of available remedies.

"Compensable injury to a constitutionally protected interest can be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts. Butz at 486. § 1983 unequivocally acts as a mechanism for remedy for a violation of constitutionally protected rights, but as the Court in Butz notes, § 1983 would be rendered ineffectual if prevented from affording a victim compensatory damages; "If ... all officials exercising discretion were exempt from personal liability, a suit under the Constitution could provide no redress to the injured citizen, nor would it in any degree deter federal officials from committing constitutional wrongs." Butz at 505. "[A] citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Id. at 504. "The barrier of sovereign immunity is frequently impenetrable.  Injunctive or declaratory relief is useless to a person who has already been injured." Id.

IV.   CONCLUSION

Plaintiff does not disagree that Eleventh Amendment immunity and corresponding available damages is a complex and often contested issue.  The matter before the Court

5

today, however, is whether the Defendant should be granted the advantage of entirely dismissing Plaintiff's prayer for damages before Plaintiff has the opportunity to offer evidence of said damages. Plaintiff contends that the one of the explicit purposes and intents of § 1983 was to offer compensation to aggrieved victims deprived of constitutional rights by government officials. Plaintiff further contends that a dismissal of his prayer, this early in litigation, would be premature and unwarrented. For these reasons and those discussed above, Plaintiff opposes Defendant's Motion to Dismiss Prayer for Compensatory Damages, and respectfully requests this Court deny Defendant's Motion.

Dated: January 17, 2016                        Respectfully submitted,

                                               SCUDI & AYERS, LLP


                                               s/ Lucas I. Mundell
                                               Morgan J.C. Scudi
                                               Lucas I. Mundell
                                               SCUDI & AYERS, LLP
                                               *Attorneys for Plaintiff, Roque "Rocky" De La Fuente*

# CERTIFICATE OF SERVICE

I, Lucas Mundell, declare that I am over the years of 18 and that I am a member of the bar of this Court. My business address is 5440 Morehouse Drive, Suite 4400, San Diego, California 92121.

I hereby certify that on , I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Jonathan M. Eisenberg
> Deputy Attorney General
> 300 S. Spring Street, Suite 1702
> Los Angeles, CA 90013
> Fax: (213) 897-6505
> Email: **jonathan.eisenberg@doj.ca.gov**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed at San Diego, California, .

/s Lucas Mundell
Lucas I. Mundell