1   XAVIER BECERRA
    Attorney General of California
2   STEPAN A. HAYTAYAN
    Supervising Deputy Attorney General
3   JONATHAN M. EISENBERG
    Deputy Attorney General
4   AMIE L. MEDLEY
    Deputy Attorney General
5   State Bar No. 266586
      300 South Spring Street, Suite 1702
6     Los Angeles, CA  90013
      Telephone: (213) 576-7476
7     Fax: (213) 897-5775
      E-mail:  Amie.Medley@doj.ca.gov
8   *Attorneys for Defendant Alex Padilla,*
    *California Secretary of State, and Erroneously*
9   *Named Co-Defendant State of California*

10

11                  IN THE UNITED STATES DISTRICT COURT

12               FOR THE CENTRAL DISTRICT OF CALIFORNIA

13             WESTERN DIVISION (FIRST STREET COURTHOUSE)

14

15  | ROQUE "ROCKY" DE LA FUENTE, | 2:16-cv-03242-MWF-GJS |
16  | | |
    | Plaintiff, | **SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
17  | | |
18  | v. | Date:        September 11, 2017 |
19  | **STATE OF CALIFORNIA AND ALEX PADILLA, CALIFORNIA SECRETARY OF STATE,** | Time:        10:00 a.m. |
    | | Courtroom:  5A |
20  | | Judge:       Hon. Michael W. Fitzgerald |
    | Defendant. | Trial Date:  October 15, 2017 |
21  | | Action Filed: May 11, 2016 |

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

3

**Page**

4

INTRODUCTION ........................................................................................... 1

5

SUMMARY JUDGMENT STANDARD ........................................................ 2

SUBSTANTIVE LAW OVERVIEW ............................................................. 3

6

ARGUMENT.................................................................................................... 5

7

I.   There Is Insufficient Evidence that The Challenged Laws
     Burden Independent Presidential Candidates' Access to the
     Ballot ............................................................................................... 5

8

9

A.   Because De La Fuente Has Never Attempted to Comply
     with the Challenged Laws, There Is No Evidence of Their
     Possible Burden on Him ....................................................... 6

10

11

B.   De La Fuente's Assertions About the Potential Expense of
     Signature-Gathering Do Not Preclude Summary
     Judgment............................................................................... 8

12

1.   The Expense of Signature Gathering Is Not a
     Material Fact Standing Alone ......................................... 8

13

14

2.   De La Fuente's Unsubstantiated Assertions About
     the Potential Expense of Signature-Gathering Do
     Not Offer Competent Evidence of a Burden in Any
     Event............................................................................... 9

15

16

C.   Expert Witness Richard Winger's Opinions About the
     Challenged Laws Do Not Create a Material Fact Dispute
     Precluding Summary Judgment............................................ 11

17

1.   Winger's Opinions Lack a Foundation in Facts............. 12

18

2.   Judicially Noticeable Facts Severely Undercut
     Winger's Opinions ......................................................... 14

19

20

3.   Winger's 5,000-Signature Theory Does Not
     Address Whether California's 1% Requirement is
     Burdensome.................................................................... 15

21

4.   De La Fuente Accessed the Ballot as A Party
     Candidate in The 2016 Presidential Primary ................ 15

22

23

II.  The Challenged Laws Survive the Appropriate Level of
     Constitutional Scrutiny Under the Remaining Elements.................... 16

24

1.   The Secretary's Invocation of State Interests
     Cannot Be Contradicted by Evidence in This Case ....... 17

25

2.   De La Fuente Offers Only Incomplete Evidence
     and Argument About the Necessity of the
     Challenged Laws ............................................................ 17

26

27

III. To Decide This Case, the Court Need Not Consider Any
     Material Outside the Four Corners of the Pleadings ......................... 18

CONCLUSION................................................................................................ 19

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Party of Texas v. White*
    415 U.S. 767 (1974) ........................................................................ 3, 7, 18

*Broadrick v. Oklahoma*
    413 U.S. 601 (1973) ................................................................................ 7

*Bullock v. Carter*
    405 U.S. 134 (1972) ............................................................................ 3, 6

*Burdick v. Takushi*
    504 U.S. 428 (1992) ............................................................................... 3

*Celotex v. Catrett*
    477 U.S. 317 (1986) ............................................................................... 2

*Chamness v. Bowen*
    722 F.3d 1110 (9th Cir. 2013) ........................................................*passim*

*Cleveland v. Grocery Works.com LLC*
    200 F.Supp.3d 924 (N.D. Cal. 2016) .................................................... 9

*Cross v. Fong Eu*
    430 F.Supp. 1036 (N.D. Cal. 1977) .................................................... 18

*De La Fuente v. Padilla*
    U.S.C.A., No. 16-56261 (9th Cir. Mar. 30, 2017) ............................. 10

*Libertarian Party of Fla. v. Florida*
    710 F.2d 790 (11th Cir. 1983) ......................................................... 6, 8

*Lubin v. Panish*
    415 U.S. 709 (1974) ............................................................................... 4

*Munro v. Socialist Workers Party*
    479 U.S. 189 (1986) ..................................................................... 4, 9, 17

*Nader v. Cronin*
    620 F.3d 1214 (9th Cir. 2010) ........................................................... 18

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Parker v. Levy*

4

    417 U.S. 733 (1974) ............................................................. 5, 7

5

*Planned Parenthood of Idaho, Inc. v. Wasden*

6

    376 F.3d 908 (9th Cir. 2004) ............................................... 18

7

*Raza Unida Party v. Bullock*

8

    349 F.Supp. 1272 (W.D. Tex. 1972) .................................... 6

9

*Rebel Oil Co. v. Atl. Richfield Co.*

    51 F.3d 1421 (9th Cir. 1995) ............................................... 11

10

*Storer v. Brown*

11

    415 U.S. 724 (1974) ............................................................ 4, 16

12

*Thornhill Publ'g Co., Inc. v. Gen. Tel. and Elec. Corp.*

13

    594 F.2d 730 (9th Cir. 1978) ............................................... 11

14

*Timmons v. Twin Cities Area New Party*

15

    520 U.S. 351 (1997) ............................................................ 3

16

*Tovar v. U.S. Postal Serv.*

17

    3 F.3d 1271 (9th Cir. 1993) ................................................. 2

18

*Triton Energy Corp. v. Square D Co.*

19

    68 F.3d 1216 (9th Cir. 1995) ............................................... 11

20

*Van Asdale v. Int'l Game Tech.*

    577 F.3d 989 (9th Cir. 2009) ............................................... 9, 10

21

22

*Washington State Grange v. Washington State Republican Party*

    552 U.S. 442 (2008) ............................................................ 5

23

**STATUTES**

24

California Elections Code

25

    §§ 8400 and 8403 ............................................................... 1

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**CONSTITUTIONAL PROVISIONS**

4

U.S. Const. Article II,

5

§ 1, cl.2 ............................................................................................................... 3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

Defendant Alex Padilla, California Secretary of State, on behalf of himself and erroneously named Co-Defendant State of California (together, the "Secretary"), submits the following brief in support of the Secretary's motion for summary judgment adverse to Plaintiff Roque ("Rocky") De La Fuente ("De La Fuente").

**INTRODUCTION**

The Court's decision to convert the Secretary's motion for judgment on the pleadings into a motion for summary judgment has provided the Secretary with an opportunity to demonstrate that whether the Court looks to the evidence De La Fuente has proffered in opposition to the original motion or looks only within the four corners of the pleadings, the result is the same. De La Fuente's constitutional challenges fail. As demonstrated below, based on undisputed facts and/or De La Fuente's failure to offer necessary evidence, De La Fuente has failed to establish that the signature-gathering requirement in California Elections Code sections 8400 and 8403 (the "Challenged Election Laws") imposes an unconstitutional burden on general-election ballot access by independent candidates for President of the United States.

Because De La Fuente has never tried to comply with the Challenged Election Laws, there is no extant evidence of how those laws impose a burden, as applied to him or to independent candidates generally. De La Fuente has offered only speculation and idiosyncratic opinions about the extent of the Challenged Election Laws' alleged burden and/or how the statutes could be "improved" to his liking, rather than competent evidence demonstrating a material factual dispute precluding summary judgment.

Even if De La Fuente has shown that the Challenged Laws impose a burden to some degree, De La Fuente's constitutional attack still fails, because, as the Secretary already showed in prior briefing, the Challenged Laws are both reasonably necessary and reasonably related to achieving the State of California's well-established interests in preserving the function of primary elections in

1

1   winnowing down fields of candidates; ensuring that general-election ballots present

2   only viable candidates, for whom the voters already have shown considerable

3   interest; and (thereby) maintaining uncluttered ballots for general elections.  For

4   this part of the analysis, whereby the Secretary has to articulate but not prove the

5   need for the State of California's objectives for the Challenged Laws, and that they

6   are reasonably necessary to fulfill those objectives, De La Fuente has not proffered

7   and almost certainly could not proffer admissible evidence to create a material fact

8   dispute precluding summary judgment.

9       As such, the Court has to resolve questions of law only, and can do so by

10   proceeding to rule on the merits of the present motion.  The Court should enter

11   summary judgment in the Secretary's favor and against De La Fuente, because, as a

12   matter of law, the Challenged Laws do not unconstitutionally burden general-

13   election ballot access for independent presidential candidates.

14                 **SUMMARY JUDGMENT STANDARD**

15       A party moving for summary judgment must show "that there is no genuine

16   dispute as to any material fact and the movant is entitled to judgment as a matter of

17   law."  Fed. R. Civ. P. ("FRCP") 56(b).  "The moving party's burden is to show an

18   absence of evidence to support the nonmoving party's case.[]  When the moving

19   party carries this burden, the entry of summary judgment is mandated against a[n

20   opposing] party who fails to make a showing sufficient to establish the existence of

21   an element essential to that party's case, and on which that party will bear the

22   burden of proof at trial."  *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1284 (9th Cir.

23   1993) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986) (some internal

24   punctuation omitted)).  The moving party need not offer evidence negating the non-

25   moving party's claim in order to prevail on summary judgment.  *Celotex*, 477 U.S.

26   at 323 ("[W]e find no express or implied requirement in Rule 56 that the moving

27   party support its motion with affidavits or other similar materials negating the

28   opponent's claim.")

**SUBSTANTIVE LAW OVERVIEW**

As the Secretary argued in his motion for judgment on pleadings, there is no fundamental right to run for elective public office. *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972). And voters also do not have a constitutional right to vote for a specific candidate. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Although "voting is of the most fundamental significance under our constitutional structure . . . . [i]t does not follow [that] the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* In the end, "the function of elections is to elect candidates," and the Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activities at the polls." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 369 (1997) (quoting *Burdick*, 504 U.S. at 437-38).

Furthermore, the Constitution gives each State the power to direct the manner of appointment of electors for President from that State. U.S. Const. art. II, § 1, cl.2. The Supreme Court has explained that State governments "must play an active role in structuring elections . . . if some sort of order, rather than chaos, is to accompany the democratic process." *Burdick*, 504 U.S. at 433.

The framework for election-law constitutional challenges, including ballot-access challenges, consists of three elements to be analyzed.
*First*, the court must weigh "the character and magnitude of the burden the State's rule imposes" on the right at issue. *Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013) (quoting *Rubin v. City of Santa Monica*, 308 F.3d 893, 1014 (9th Cir. 2002)). Here, the party bringing the challenge must establish that there is a significant burden. *Am. Party of Texas v. White*, 415 U.S. 767, 790 (1974) (upholding against constitutional challenge Texas's ballot-access law in part because plaintiffs-candidates presented "absolutely no factual basis in support of their claims that [the challenged provision] imposed unduly burdensome requirements.").

1    *Second*, depending on the severity of the burden in context, the court selects

2    an appropriate level of constitutional scrutiny to apply to the challenged election

3    law, and then examines the law accordingly. *Chamness*, 722 F.3d at 1116. If the

4    challenged law severely burdens a constitutional right, then the court strictly

5    scrutinizes it, and the State defending the law must show that it is narrowly tailored

6    to achieve a compelling government interest. *Id.* Non-discriminatory election laws

7    that impose lesser burdens need be only reasonably related to the State's important

8    regulatory interests. *Id.* The Ninth Circuit Court of Appeals has noted several

9    times that "voting regulations are rarely subject to strict scrutiny." *Id.* (citing

10   *Dudum v. Arntz*, 640 F.3d 1098, 1103 (9th Cir. 2011)).

11   *Third*, the court must conduct the appropriate analysis, by considering "the

12   interests that the State contends justify that burden," followed by consideration of

13   "the extent to which the State's concerns make the burden necessary." *Chamness*,

14   722 F.3d at 1116. Past case decisions have identified multiple significant

15   government interests that a government defendant, such as the Secretary, may

16   invoke—without proffering supporting evidence—to help a challenged election law

17   pass this part of the test as a matter of law. *See*, *e.g.*, *Lubin v. Panish*, 415 U.S.

18   709, 715 (1974) ("the State's interest in keeping its ballots within manageable,

19   understandable limits is of the highest order") (citing *Bullock*, 405 U.S. at 144-45);

20   *Storer v. Brown*, 415 U.S. 724, 729 (1974) (recognizing "the substantial state

21   interest in encouraging compromise and political stability, in attempting to ensure

22   that the election winner will represent a majority of the community and in providing

23   the electorate with an understandable ballot"); *Munro v. Socialist Workers Party*,

24   479 U.S. 189, 194-95 (1986) ("there is 'an important state interest . . . in avoiding

25   confusion, deception, and even frustration of the democratic process at the general

26   election'") (citing *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)). The fit between

27   the State's concerns and the burden imposed also presents a question of law,

28   appropriate for resolution by summary judgment. *See Chamness*, 722 F.3d at 1116.

4

1
2
3

**ARGUMENT**

**I.   THERE IS INSUFFICIENT EVIDENCE THAT THE CHALLENGED LAWS
BURDEN INDEPENDENT PRESIDENTIAL CANDIDATES' ACCESS TO THE
BALLOT**

A party challenging the constitutionality of an election statute bears the burden of establishing that the statute unconstitutionally burdens that party's rights. *Chamness*, 722 F.3d at 1116.  As discussed in the Secretary's motion for judgment on the pleadings, De La Fuente did not sufficiently plead that the Challenged Laws severely burden his alleged constitutional right of general-election ballot access. Likewise, in opposing the motion with proffered evidence, De La Fuente has still not made a sufficient showing that the Challenged Laws severely burden this right.

Whether De La Fuente's challenge is treated as a facial challenge, as the Secretary has argued it should be, or an as-applied challenge, the result is the same.[1]  He has offered no evidence to establish that the Challenged Laws burden his own ballot access, as necessary for an as-applied challenge.  Furthermore, in the context of a facial challenge, "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."  *Parker v. Levy*, 417 U.S. 733, 759 (1974) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)).  Thus, if the Challenged Laws are not unconstitutional as applied to De La Fuente himself, he may not argue that they are unconstitutional as applied to other, hypothetical independent candidates.  "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."  *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (citing *United States v. Raines*, 362 U.S. 17, 22 (1960)).

---

[1] In the motion up to this point, the Secretary argued that this case should be treated as a facial challenge.  Since the Court converted the motion to one for summary judgment, the Secretary now addresses De La Fuente's potential as-applied challenge as well.

For several reasons, De La Fuente has not offered and cannot offer evidence sufficient to create a material issue of fact in this case.  First, it is undisputed that he made no attempt to gather the required signatures to access the general-election ballot.  Second, his stated concerns about the cost of professional signature gathers are inapposite and are not support by any actual evidence of what the cost would be.  Third, the opinions offered by his expert, Richard Winger, are flawed and do not suffice to establish that the Challenged Laws are burdensome.  And, finally, De La Fuente did, in fact, appear on the 2016 California primary-election ballot for the Democratic Party nomination for President.  For these reasons, discussed further below, De La Fuente has not offered and cannot offer evidence sufficient to create a material issue of fact in this case.

### A. Because De La Fuente Has Never Attempted to Comply with the Challenged Laws, There Is No Evidence of Their Possible Burden on Him

In ballot-access cases, potential candidates who are simply unwilling, rather than unable, to comply with the applicable requirements cannot evidence that they were precluded from the ballot.  *Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 794 (11th Cir. 1983), *cert denied* 469 U.S. 831 (1984) ("Some of the plaintiffs in this case testified they had not even attempted to undertake a petition drive because in their view the 3% requirement simply was impossible to meet.  Plaintiffs failed to present factual evidence that they were precluded from obtaining ballot status by the challenged regulations."); *Raza Unida Party v. Bullock*, 349 F.Supp. 1272, 1284 (W.D. Tex. 1972) ("[I]nability, rather than unwillingness, to comply is crucial here"), *aff'd in part, vacated in part sub nom. Am. Party of Texas*, 415 U.S. at 790; *see also Bullock*, 405 U.S. at 145-46 ("[T]he candidates in this case affirmatively alleged that they were unable, not simply unwilling, to pay the assessed fees.").

It is undisputed that De La Fuente was unwilling to gather the requisite number of signatures under the Challenged Laws to have his name included on the 2016 general-election ballot for president in California.  (See Declaration of Roque

1   De La Fuente ("De La Fuente Decl."), ¶¶ 6-8; Statement of Undisputed Facts

2   ("SUF") at ¶ 1.)  De La Fuente explains that "I was advised by my campaign

3   committee and political strategists to evaluate my allocation of resources

4   throughout the various states" and that "California's requirement of 178,039

5   qualified petition signatures . . . was a cost-prohibitive endeavor."  (*Id.*, ¶ 6.)  Thus

6   De La Fuente did not undertake that endeavor.  (*Id.*, ¶ 8.)

7       Because De La Fuente did not attempt to comply with the regulations that he

8   now challenges, De La Fuente has "failed to present factual evidence that [he was]

9   precluded from obtaining ballot status by the challenged regulations."  *Am. Party of*

10  *Texas*, 415 U.S. at 781.  De La Fuente argues in his opposition that the appropriate

11  inquiry is not how the Challenged Laws affected him, but whether "a reasonably

12  diligent independent candidate" could satisfy the signature requirement at issue.

13  (De La Fuente Memo. of P's and A's in Opp. to Mtn. for J. on the Pleadings

14  ("Opp."), [Dkt. # 63, filed June 30, 2017] at 23 (citing *Storer v. Brown*, 415 U.S.

15  724, 742-43 (1974) and *Nader v. Cronin*, 620 F.3d 1214, 1218 (9th Cir. 2010)).

16  But if De La Fuente cannot establish that the Challenged Laws are unconstitutional

17  as applied to him, his facial challenge must fail as well.  *Parker*, 417 U.S. at 759;

18  *Broadrick*, 413 U.S. at 610. In any event, De La Fuente fails his own preferred

19  inquiry, because he was far from a reasonably diligent candidate.  Aside from De

20  La Fuente's decision that attempting to comply with the Challenged Laws was cost

21  prohibitive, his attention was also divided between his Presidential aspirations and

22  his campaign for a Florida Senate seat.  Eisenberg Decl., Exh. 1 (Don Bauder,

23  "Roque De La Fuente to Run for U.S. Senate in Florida," *San Diego Reader* (Jun.

24  22, 2016) (available online at http://www.sandiegoreader.com/

25  news/2016/jun/22/ticker-roque-de-lafuente-run-us-senate-florida/); Exh. 2 ("U.S.

26  Senate - Roque 'Rocky' De La Fuente," *Orlando Sentinel* (July 27, 2016) (available

27  online at http://www.orlandosentinel.com/news/politics/orl-us-senate-roque-rocky-

28  de-la-fuente-20160726-story.html); SUF at ¶ 2.

7

1    Because De La Fuente did not attempt to comply with the regulations that he

2    now challenges, De La Fuente has "failed to present factual evidence that [he was]

3    precluded from obtaining ballot status by the challenged regulations." *Libertarian*

4    *Party of Fla.*, 710 F.2d at 794.  Whether treated as facial or as-applied, De La

5    Fuente's challenge fails the first part of the three-part *Chamness* analysis.  On this

6    basis alone, the Court could and should grant summary judgment in the Secretary's

7    favor, and adverse to De La Fuente, with no need to go further in the analysis.

8    **B.    De La Fuente's Assertions About the Potential Expense of**
         **Signature-Gathering Do Not Preclude Summary Judgment**
9

10            **1.    The Expense of Signature Gathering Is Not a Material Fact**
                     **Standing Alone**

11    De La Fuente has argued that he would have to hire professional signature-

12    gatherers to be able to comply with the Challenged Laws, that doing so would be

13    cost-prohibitive, and that there should be a trial about this issue.

14    But the potential costs for De La Fuente alone are not material to resolving the

15    question at hand because paid professional signature gatherers are not the only

16    means for gathering signatures.  Were he a reasonably diligent independent

17    candidate, De La Fuente most assuredly would have had other means for collecting

18    the necessary signatures.  For example, as mentioned in the Secretary's reply brief,

19    Ross Perot's 1992 campaign was run by a large group of volunteer activists who

20    continued their state-by-state petition drives despite their candidate's having

21    dropped out of the race for seventy days.  Reply in Support of Motion for Judgment

22    on the Pleadings, filed July 17, 2017, Dkt. # 69 at 13 (citing Andrew D. Martin and

23    Brian E. Spang, "A Case Study of a Third Presidential Campaign Organization:

24    Virginians for Perot," in Ted G. Jelen, ed., Ross the Boss: The Perot Phenomenon

25    and Beyond 35-36 (State University of New York Press, 2001)).  Even if a

26    candidate chooses to hire professional signature-gathers, he or she could raise

27    money from supporters to cover the costs of the work, or combine both volunteer

28    efforts and paid signature gatherers.  De La Fuente proffers no evidence that those

1     other means were unavailable to him.  In any event, a candidate's inability to

2     muster volunteers or fundraising support does not render an election law

3     unconstitutional.  "States are not burdened with a constitutional imperative to

4     reduce voter apathy or to 'handicap' an unpopular candidate to increase the

5     likelihood that the candidate will gain access to the general election ballot." *Munro*,

6     479 U.S. at 198.  De La Fuente's assertion that one means of signature-gathering is

7     costly is incomplete and thus falls short of a factual assertion that would preclude

8     summary judgment.

9

10           **2.**     **De La Fuente's Unsubstantiated Assertions About the Potential Expense of Signature-Gathering Do Not Offer Competent Evidence of a Burden in Any Event**

11

12        Even if the cost of signature gathering theoretically would be a material fact in

13     this case, De La Fuente has not offered competent evidence sufficient to establish

14     what those expenses would be and thus fails to present a material fact precluding

15     summary judgment.  Rather, De La Fuente asserts inflated figures that directly

16     contradict his prior statements in this case, exposing his current declaration as a

17     "sham affidavit," not competent evidence, that the Court should not consider.  *See*

18     *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (discussing

19     traditional sham-affidavit rule, whereby court may disregard witness declaration

20     that contradicts his/her prior deposition testimony); *Cleveland v. Grocery*

21     *Works.com LLC*, 200 F.Supp.3d 924, 942 (N.D. Cal. 2016) (indicating that sham-

22     affidavit rule applies in other situations besides just declaration-deposition, such as

23     where prior inconsistency with declaration contained in discovery response).  De La

24     Fuente has not offered legitimate evidence establishing the costs of signature

25     collection by paid professionals.  The main problem is that, in the course of this

26     litigation, De La Fuente has given multiple conflicting estimates of both the costs of

27     and the number of signatures required in practice, to ensure that enough of the

28

1  signatures will be valid.  The sham-affidavit rule requires this Court to disregard De
2  La Fuente's proffered evidence on this topic.

3      De La Fuente's own self-contradiction:  In De La Fuente's declaration in
4  support of his opposition to this motion, he testifies that using professional
5  signature-gatherers to garner enough signatures would cost his campaign between
6  $3-4 million, and that he would need to gather "up to 200%" of the required
7  signatures to be sure he would have enough valid signatures.  (De La Fuente Decl.,
8  ¶ 7.)  Yet on appeal from this Court's denial of his preliminary-injunction motion,
9  he argued, quite differently, that "a hopeful presidential candidate in California
10  must collect approximately 231,451 signatures . . . at a cost of $1,502,117" and that
11  only an "additional 25-30% of signatures" would be necessary to account for the
12  disqualification of invalid signatures.  See page 11 of De La Fuente's appellant's
13  brief in *De La Fuente v. Padilla*, U.S.C.A., No. 16-56261 (9th Cir. Mar. 30, 2017).

14      De La Fuente's expert witness Richard Winger's self-contradiction:
15  Meanwhile, De La Fuente's expert witness, Richard Winger, testified in his
16  deposition that "[t]here's probably at least a 25 percent chance [a petition signature]
17  is invalid," which would indicate that an additional 25-30 percent above the
18  required number of signatures should be gathered, to make up for the inevitable
19  invalid signatures.  (Eisenberg Decl., Exh. 3, at 82:3-82:8.)  Yet in Winger's
20  subsequent declaration in opposition to this motion, Winger changed course, stating
21  that it would be "prudent" for a candidate to gather "an additional 50% signatures"
22  for a total of 267,058 signatures in 2016, and that the cost of doing so would be
23  "astronomically high."  Winger Decl. at ¶ 22.

24      This mishmash of conflicting numbers and opinions does not amount to
25  competent evidence on this topic; the Court should refuse to admit into the record
26  that self-defeating evidence, rendering it unable to create a fact issue precluding
27  summary judgment.  *Van Asdale*, 577 F.3d at 998.

28

1   Moreover, because conclusory and speculative opinions cannot form the

2   evidentiary basis for successful opposition to a motion for summary judgment,

3   *Thornhill Publ'g Co., Inc. v. Gen. Tel. and Elec. Corp.*, 594 F.2d 730, 738 (9th Cir.

4   1978), the conclusory and speculative nature of De La Fuente's and Winger's

5   opinions constitute another, separate reason for this this Court to find a lack of bona

6   fide fact dispute in this part of the case, and to grant the Secretary's motion for

7   summary judgment adverse to De La Fuente.

8   **C.   Expert Witness Richard Winger's Opinions About the Challenged Laws Do Not Create a Material Fact Dispute Precluding Summary Judgment**

9

10   "[E]xpert opinion may defeat summary judgment if it appears the expert is

11   competent to give an opinion and the factual basis for the opinion is disclosed."

12   *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 122 (9th Cir. 1995).  "The

13   inquiry is whether the inference to be drawn from the expert's opinion is reasonable

14   given the substantive law which is the foundation for the claim or defense."  *Rebel*

15   *Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) (some internal

16   punctuation omitted).

17   Winger's opinions, as stated in his report and at his deposition, are

18   incompetent because they are built upon false and/or inadequate foundations.  *First*,

19   as demonstrated in the rebuttal report prepared by the Secretary's expert, Dr.

20   Colleen Kelly, Ph.D. (statistics), Winger's methodology is fatally flawed.  Winger

21   admits that he reached his opinions based on intuition rather that any accepted

22   scholarly methodology.  *Second*, judicially noticeable facts regarding the presence

23   of a diverse set of candidates on California's general-election ballots for President,

24   including several independent presidential candidates, indisputably defeat Winger's

25   opinion that the Challenged Laws have severely burdened ballot access.  *Finally*,

26   Winger's opinion that a 5,000-signature requirement is the appropriate threshold

27   requirement does not address the question at issue:  whether California's 1-percent

28

formula imposes (unconstitutionally) severe burdens on candidates.  Each of these points is discussed in further detail below.

### 1.    Winger's Opinions Lack a Foundation in Facts

Winger admitted that *by intuition* he reached his opinions, about 5,000 as some kind of magic, maximum number of signatures for ballot access, after reviewing vast amounts of numerical voting data, and without performing any kind of statistical analysis.  At deposition, Mr. Winger stated of his "methodology": "[i]t's not clear to me how 5,000 popped into my head.  But I just have the impression that after decades of paying attention to this, it was kind of intuitive." (Winger Depo., 46:21-46:23.)  In her report, Dr. Kelly points out several fundamental, fatal flaws in Winger's analysis-by-intuition, establishing beyond reasonable questioning that there is no valid foundation for Winger's opinions. (Eisenberg Decl., Ex. 4 (Report of Dr. Colleen Kelly ("Kelly Report")), ¶ 2.)

For example, Dr. Kelly points out the logical fallacy in Winger's assumption that because a crowded ballot[2] has never occurred in a State that requires 5,000 or more signatures for ballot access, such crowding never will occur if the requirement is precisely 5,000 signatures, and that figure represents the constitutional ceiling on the number of signatures that can be demanded.  (Kelly Report, ¶ 1.)

For another example, as Dr. Kelly explains in her report, the admitted historical fact that there has not been an overcrowded general-election ballot for President in California, which at all relevant times has required many more than 5,000 signatures for the ballot access at issue, "may be true precisely because California has had a signature requirement of 1% . . ."  (Kelly Report, ¶ 6.) Winger's intuition, about the minimum raw number of signatures still consonant with an uncrowded ballot, simply does not (and probably cannot) address how

---

[2] Winger defines a crowded ballot as having eight or more candidates for the office, but he admits that the number is essentially arbitrary.  (Eisenberg Decl., Exh. 3 (Transcript of Deposition of Richard Winger) at 54:1-54:12.)

restrictive the Challenged Laws are, or whether they produce "overkill," making Winger's opinion off-point and irrelevant.

For yet another example, Dr. Kelly emphasizes the illegitimacy of the unsophisticated approach that Winger takes to his work. As Dr. Kelly explains, Winger's data set "is a compilation of states with very different signature requirements, very different population sizes, and very different political cultures. Pooling data from very different states without modeling the differences between the states can lead to conclusions that do not apply to any of the states, much less to California," the most populous U.S. state. Kelly Report, ¶ 4. Notably, at deposition, Winger acknowledged the existence of variables that might affect ballot crowding, and confirmed that he did not do anything to account for them in his analysis. Winger Depo. at 47:5-47:10 ("[T]here are a lot of variables, and it's really tough to sort through all of them. There's variation in how much time is permitted to collect the signatures, how early the deadline was, whether there was a distribution requirement. But it just doesn't seem that those are dispositive.") Winger also, essentially, admitted to cherry-picking the data used, revealing that because his 5,000-signature theory "was such a neat formula that worked, to me that tells me these other variables and ballot access law aren't important . . . if they were, *there would be a lot of outliers and data that wouldn't fit*." Winger Depo., 117:12-117:16 (emphasis added). Of course, understanding outliers is part of a thorough statistical analysis that results from working with a complete data set; statistical outliers can contain valuable information in themselves. Eisenberg Decl., Ex. 5 (National Institute of Standards and Technology, Engineering Statistics Handbook at Section 7.1.5, available at http://www.itl.nist.gov/div898/handbook/prc/section1/prc16.htm). Failing to construct even a simple statistical model, Winger made no valid attempt to understand the data and thus to draw cogent, well-

1    supported conclusions.  His opinions should be disregarded as the means for

2    creating material fact disputes in this case.[3]

3         **2.    Judicially Noticeable Facts Severely Undercut Winger's Opinions**

4

5         Judicially noticeable facts thoroughly undermine any factual basis for

6    Winger's opinion that the Challenged Laws burden ballot access for independent

7    presidential candidates.

8         No fewer than six independent presidential candidates have had their names

9    placed on California general-election ballots using the petition procedures since the

10   signature requirement was lowered from 5% to 1% (of the number of registered

11   voters in the last general election) in 1976.  (Declaration of Amie L. Medley in

12   Support of Motion for Judgment on the Pleadings ("Medley Decl."; Dkt. 52-1, filed

13   with the moving papers on May 4, 2017) at Exhs. 7, 8, 10, 11, 14, 15.  At least five

14   and as many as eight presidential candidates have appeared on each general-

15   election ballot during that same time frame.  (*Id.* at Exhs. 7-17; SUF at ¶ 6.)  These

16   facts cannot be undermined by Winger's or anybody's opinion that there are not

17   enough candidates from outside the Democratic Party and the Republican Party on

18   the ballots.  These facts also establish that the Challenged Laws do *not* cause

19   unconstitutional shortages of presidential candidates on California's general-

20   election ballots.

21        De La Fuente had tried to make an issue out of the lack of *independent*

22   presidential candidates obtaining places on California general-election ballots since

23   1992, but Winger, De La Fuente's own expert, undercuts any such issue by

24   explaining at least one other likely reason: "[b]ecause California [now] has these

25   _____

26        [3] It is important to note that Dr. Kelly offered only rebuttal opinions, not affirmative opinions.  By exposing the lack of valid foundations for Winger's opinions, Kelly has demonstrated that Winger's opinions are immaterial for
27   purposes of summary judgment.  Thus, there is no conflict here between two experts' affirmative opinions, of the type that could potentially preclude summary
28   judgment.

minor parties in the ballot, that kind of—there's almost nobody left to petition."
(Winger Depo., 100:1-100:3.)  The Secretary does not traverse Winger's opinion on
that point, and so that opinion cannot be the subject of a fact dispute that could
preclude entry of summary judgment here.

### 3.     Winger's 5,000-Signature Theory Does Not Address Whether California's 1% Requirement is Burdensome

Aside from the methodological flaws that Dr. Kelly highlighted in her report
rebutting Winger's opinion, his opinion that California should not require more
than 5,000 signatures lacks relevance, because the real question is whether the 1-
percent requirement is unduly burdensome.  As Winger acknowledged in his
deposition, "[t]his case is simply about is it constitutional for California to require
almost 200,000 [signatures] . . . . it may be true that 5,000 in the future would not
keep California's ballot uncrowded, but 5,000 is not what the case is about."
(Winger Depo., 110:5-110:10.)  Thereby, Winger exposes the irrelevance of his
own opinion.

### 4.     De La Fuente Accessed the Ballot as A Party Candidate in The 2016 Presidential Primary

De La Fuente cannot offer evidence demonstrating that the Challenged Laws
have burdened his ballot access for yet another reason—De La Fuente *did*
successfully access the (primary) ballot in the 2016 presidential election as a
candidate for the Democratic Party nomination.  De La Fuente Decl., ¶¶ 4-5; SUF,
¶ 3.  Having lost the party primary, De La Fuente cannot be heard to say that his
ballot access has been burdened by the independent candidate procedures for
accessing the general election ballot.  Furthermore, De La Fuente has already
declared his intention to run for the Democratic Party nomination for President in
2020, which means that he may not even attempt to access the general-election
ballot as an independent candidate.  Eisenberg Decl., Exhs. 6 and 7.  Thus, it is

Case 2:16-cv-03242-MWF-GJS   Document 76   Filed 08/28/17   Page 21 of 25   Page ID
#:568

entirely speculative that the Challenged Laws would have any effect on De La
Fuente's 2020 presidential campaign.

De La Fuente's previous and planned candidacies for the Democratic Party's
nomination also undercut his argument that, using the language of *Storer v. Brown*,
a "candidate, who is by definition an independent and desires to remain one" should
not be required to "consider himself a party man, surrendering his independent
status."  415 U.S. 724, 745-46 (1974).  Not only did De La Fuente run for the
Democratic nomination in California in 2016, but he appeared on the general-
election ballot in other states as the candidate of various political parties.  He was
the Reform Party candidate in several states, including Wisconsin, Ohio, New
Jersey, Minnesota, Utah, Tennessee, and Wyoming.  Eisenberg Decl., Exh. 8; De
La Fuente Decl., ¶ 16; SUF, ¶ 4.  He also founded his own party, the American
Delta Party, which, according to his own declaration, appeared on the general-
election ballot in seven states.  De La Fuente Decl., ¶ 15; SUF ¶ 5.  De La Fuente
did not insist on being an independent candidate in 2016, and apparently will be a
"party man" again in the 2020 election.

## II. THE CHALLENGED LAWS SURVIVE THE APPROPRIATE LEVEL OF CONSTITUTIONAL SCRUTINY UNDER THE REMAINING ELEMENTS

For the reasons explained above, De La Fuente's claims are not subject to
strict scrutiny because he has not proffered evidence sufficient to establish that the
Challenged Laws severely burden general-election ballot access for independent
presidential candidates.  This means that the Secretary need only establish that the
Challenged Laws are "reasonably related to achieving the state's 'important
regulatory interests.'"  *Chamness*, 722 F.3d at 1116.  And analysis of the other two
*Chamness* test elements—the sufficiency of California's invoked governmental
interests in having the Challenged Laws, and the necessity of the Challenged Laws
to achieve those interests—more than meet this standard.

### 1. The Secretary's Invocation of State Interests Cannot Be Contradicted by Evidence in This Case

None of De La Fuente's evidence addresses—but, of course, it could not legitimately address—whether California has effectively invoked all of the governmental interests accepted as important in earlier cases addressing election-law challenges. Any such evidence would be irrelevant because the Secretary is not required to prove the existence of the problems to be avoided, such as actual voter confusion, ballot overcrowding, or the presence of frivolous candidates on the general election ballot, in order to justify the Challenged Laws. *Munro*, 479 U.S. at 194-95. Therefore, even if De La Fuente had contradictory evidence (which he doesn't have), it should have no effect on this Court's *Chamness*-directed analysis or the outcome of this Motion.

### 2. De La Fuente Offers Only Incomplete Evidence and Argument About the Necessity of the Challenged Laws

Through Winger, De La Fuente proffers some evidence of the alleged lack of a reasonable fit between the Challenged Law's 1-percent requirement and the accomplishment of California's pertinent goals. However, Winger's evidence is incomplete in this respect, and cannot create a fact issue about the reasonableness of the fit. Winger advocates for his preferred, hard number of signatures with the assertion that only serious candidates will be able to obtain 5,000 signatures, and so ballots will have no clutter if that number of signatures is required for ballot access. Winger Decl. at ¶ 6. Whether Winger has proved that point or not (and the Secretary believes the latter), Winger errs by focusing on that one governmental interest, and leaving unaddressed the other, pertinent governmental interests, such as having general-election ballots reflect the winnowing down of candidates that occurred in primary elections, and other such interests. In potentially demonstrating a fact issue as to one invoked governmental interest but not all of them, De La Fuente has simply not completed his task. Therefore, the Secretary

17

should prevail on this motion on the uncontested evidence of the necessity of the Challenged Laws, and the uncontested evidence as to the laws' reasonable fit with the other governmental interests.  In other words, as a matter of law, the third part of the *Chamness* test also resolves in the Secretary's favor, and against De La Fuente.

### III.  TO DECIDE THIS CASE, THE COURT NEED NOT CONSIDER ANY MATERIAL OUTSIDE THE FOUR CORNERS OF THE PLEADINGS

As explained at length in the Secretary's motion for judgment on the pleadings, it is the Secretary's position that no facts are truly relevant to the question posed in this case.  The Court can analyze each of the three *Chamness* elements by reference to the pleadings, previous cases, and a few judicially noticeable facts.  "The constitutionality of a state statute is a question of law." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004).

*First*, De La Fuente's pleadings reveal that he has no personal experience of being subject to, and trying to comply with, the Challenged Laws.

*Second*, signature-gathering requirements similar to California's have been upheld in several previous cases, which uniformly found that the requirements did *not* severely burden ballot access.  *See Nader v. Cronin*, 620 F.3d 1214, 1218 (9th Cir. 2010) (upholding Hawaii's signature requirement of 1% of votes cast in the previous election); *Am. Party of Texas*, 415 U.S. at 788 (upholding Texas' signature requirement of 1% of votes cast—gathered from only voters that did not cast a vote in any party's primary election); *Cross v. Fong Eu*, 430 F.Supp. 1036, 1042 (N.D. Cal. 1977) (upholding California's then-current version of the Challenged Laws).

*Third*, as discussed above, the Secretary need not make any evidentiary showing regarding the already-recognized state interests in regulating access to the general-election ballot.  It is accepted that, by requiring independent candidates to show at least a modicum of support before their names can appear on general-election ballots, California, like other U.S. states, avoids crowded ballots and voter

1  confusion, and preserves the function of primary elections of winnowing down the

2  field of candidates.

3      *Finally*, because the Challenged Laws do not impose a severe burden on

4  independent candidates' ballot access, the Secretary need only demonstrate with

5  argument that the Challenged Laws are "reasonably related to achieving the state's

6  'important regulatory interests.'" *Chamness*, 722 F.3d at 1116.  The Secretary has

7  demonstrated the fit in the prior motion papers—and De La Fuente could not

8  contradict the point with evidence, which is irrelevant.

9                          **CONCLUSION**

10     For the foregoing reasons, the Secretary asks that the Court grant summary

11  judgment in favor of the Secretary and adverse to De La Fuente.

12

13   Dated:  August 28, 2017                    Respectfully submitted,

14                                              XAVIER BECERRA
                                                Attorney General of California
15                                              STEPAN A. HAYTAYAN
                                                Supervising Deputy Attorney General
16                                              JONATHAN M. EISENBERG
                                                Deputy Attorney General
17

18
                                                /s/ *Amie L. Medley*
19                                              AMIE L. MEDLEY
                                                Deputy Attorney General
20                                              *Attorneys for Defendant Alex Padilla,*
                                                *California Secretary of State, and*
21                                              *Erroneously Named Co-Defendant*
                                                *State of California*
22

23

24

25

26

27

28

                                    19

# CERTIFICATE OF SERVICE

Case Name:  **De La Fuente, Roque "Rocky"**          No.      **2:16-cv-03242-MWF-GJS**
                    **v. State of California, et al.**

I hereby certify that on August 28, 2017, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 28, 2017, at Los Angeles, California.

|                          |                          |
|--------------------------|--------------------------|
| Beth Capulong            | /s/ *Beth Capulong*      |
| Declarant                | Signature                |

52609763.doc