SCUDI & AYERS, LLP
Morgan J.C. Scudi (SBN 147942)
J. Ray Ayers (SBN 2177706)
Lucas I. Mundell (SBN 310367)
San Diego, California 92121
Phone: 858.558.1001
Fax:   858.558.1122
Lucas@RDLFG.com

IMPG Advocates, Inc.
Paul A. Rossi, (PA 84947)
*Admission Pro Hac Vice*
316 Hill Street
Mountville, PA  17554
Phone:  717.961.8978
Fax:  717.898-9302
Paul-Rossi@comcast.net

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROQUE "ROCKY" DE LA FUENTE,<br><br>      Plaintiff,<br><br>vs.<br><br>STATE OF CALIFORNIA & ALEX PADILLA<br>CALIFORNIA SECRETARY OF STATE<br><br>      Defendant. | Case No.: 2:16-cv-03242-MWF-GS<br><br>PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFNEDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>JUDGE: HON. MICHAEL W. FITZGERALD<br>CTRM. 5A<br>DATE:  OCTOBER 2, 2017<br>TIME:  10:00 AM |

1

# I.   **Defendants' Motion for Summary Judgment Should be Denied**.

## A.   **Summary of the Argument**

California and Defendants only require independent presidential candidates to collect valid signatures from 1% of all registered voters.  No other candidate, including any other state-wide candidate, was required to collect 178,039 valid signatures from registered voters (which, in actually, imposes the need to collect over 340,000 signatures to guard against invalid signatures) as a condition to gain access to California's 2016 election ballot.  Furthermore, just recently, on September 11, 2017, California's state legislature passed Assembly Bill 469 which, if signed by the Governor on or before October 19th, will actually lower the maximum statutory number of signatures that a non-presidential candidate must collect in lieu of paying a filing fee from 10,000 signatures to 7,000 signatures. The recent action taken by the state legislature clearly further establishes that California's assertion of the need to impose the 1% voter registration requirement on independent presidential candidates is a mere pretext to exclude independent presidential candidates from the state's ballot and not designed to support any legitimate state interest.  Furthermore, Plaintiff has presented evidence from an expert witness Richard Winger (attached hereto as Exhibit A) that any signature requirement in excess of 5,000 valid signatures is not necessary to prevent ballot

clutter and/or voter confusion.[1]  In the absence of any evidence from Defendants to refute the evidence introduced by Plaintiff showing that Defendants lack any state interest in the 1% voter registration requirement, Defendants have utterly failed to establish, as Defendants must, the lack of any dispute as to a material fact in this case.

Furthermore, the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 768 (1983) explained that:

> "[I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest.  For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation.  Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States.  Thus, in a Presidential election, a State's enforcement of more stringent ballot

---

[1] The United States District Court for the Northern District of Georgia accepted Richard Winger as an expert witness and his cognate testimony on the 5,000 signature threshold as a sufficient bulwark against "ballot clutter" and "voter confusion" in rejecting Georgia's asserted state interest in a nearly identical signature requirement of 1% of the registered voters of Georgia in granting Plaintiffs' motion for summary judgment in *Green Party of Georgia v. Kemp*, 171 F.Supp.3d 1340 (N.D. Ga 2016).

3

access requirements…has an impact beyond its own borders. Similarly, the State has a less important interest in regulating Presidential elections than state-wide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries….The pervasive national interest in the selection of candidates for national office, and this national interest is greater than any interest of an individual State."

*Anderson* at 794-95.   Accordingly, even if Defendants had introduced some evidence advancing a state interest in support of the 1% voter registration signature requirement, *Anderson* likely precludes, under both the First Amendment and Equal Protection Clause, the grant of Defendants' pending motion for summary judgment where California and Defendants have acted to impose stricter ballot access requirements on independent candidates for President and Vice-President of the United States than they have for any state candidates for political office.

In addition, for the reasons stated below, Plaintiff is not required to have circulated election petitions in 2016 in order to have standing to maintain his instant claims (especially as a candidate for the Office of President of the United States in 2020).   Accordingly, Defendants' pending motion for summary judgment must be denied.   In fact, on the record before this Court, this Court should, *sua*

*sponte*, grant summary judgment in favor of Plaintiff's facial challenge to Sections 8400 and 8403 of the California Election Code.

###   B.   <u>Standard of Review</u>

Courts mat enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See,* Fed. R. Civ. P. 56(a).  A party may oppose a motion for summary judgment by asserting "any of the kinds of evidentiary materials listed in Rule 56(c)," including declarations and affidavits.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If, as to any given material fact, evidence produced by the moving party…conflicts with evidence produced by the nonmoving party…we must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact."  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  Moreover, a court ruling on a motion for summary judgment may not engage in "[c]redibility determinations" or "the weighing of evidence," as those are functions reserved for the jury.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Under Rule 56(f) of the Federal Rules, this Court, after giving notice and a reasonable time to respond to opposing counsel, may grant summary judgment for a non-movant.  While Plaintiff is content to take this litigation to trial, on the

record before the Court, it is clear that Plaintiff is entitled to summary judgment on Plaintiff's facial attack on Sections 8400 and 8403 of the California Election code and the requested prospective equitable relief set forth in Plaintiff's complaint.

**C.**  **Defendants Have Produced No Evidence Supporting a State Interest to Require Independent Presidential Candidates to File Election Petitions Containing Valid Signatures from 1% of California's Registered Voters.**

Defendants have produced no evidence to overcome Plaintiff showing that a 5,000 signature requirement is sufficient to prevent the legitimate state interest against "ballot clutter" and "voter confusion."  The existence of a legitimate state interest in support of the 1% voter registration signature requirement is a material fact in this case.  Richard Winger's expert testimony that states with a 5,000 election petition signature requirement have not experienced any evidence of "ballot clutter" and the alleged associated risk of "voter confusion" is left uncontested in this case.  Accordingly, based on the standard of review on Defendants' motion for summary judgment, at a minimum, an issue of material fact is in dispute in support of Plaintiff's opposition to Defendants' motion. Accordingly, Defendants' motion must be denied.

**D.**  **Plaintiff Has Standing to Maintain His Constitutional Claims.**

Defendants argue in their brief in support of their motion for summary judgment that Plaintiff lacks standing to maintain his constitutional claims for the

sole reason that he failed to circulate election petitions in California in 2016 in support of his independent campaign for President of the United States. Defendants' argument runs counter to established precedent.  Putting aside, for the moment, Plaintiff's 2016 independent campaign for president, Plaintiff has declared that he is a candidate for President of the United States in 2020.  *See*, Exhibit B, ¶21.  As a candidate for president in the 2020 election, Plaintiff is entitled to challenge unconstitutional state ballot access requirements so that he can properly prepare for an independent candidacy for President of the United States in the 2020 election.

With respect to Plaintiff's 2016 campaign, he refused to spend the estimated $3,000,000 to gain access to California's 2016 general election ballot because it was, on its face, too expensive.  Having secured access to the 2016 general election ballots in 20 states as an independent candidate, Plaintiff has also clearly established standing based on his 2020 campaign's circulation of election petitions. *See*, Exhibit B, ¶¶ 10-14.  Federal courts have established and recognized standing to challenge ballot access laws for candidates who have refused to submit to a specific state's signature gathering requirements.  In *Storer v. Brown*, 415 U.S. 724 (1974), Gus Hall was an independent candidate for President of the United States who refused to circulate election petitions and was, nevertheless, recognized as a

plaintiff in that case with standing to advance his claims.  Accordingly, Plaintiff's refusal to submit to the excessive costs imposed by an unconstitutional ballot access statute in 2016 does not deprive Plaintiff of standing to maintain his instant claims against Defendants.

## II.   <u>Plaintiff's Constitutional Claims Are Facially Valid</u>

The right to vote, the right to associate for political purposes and the right to be a political candidate are fundamental constitutional rights protected by the First and Fourteenth Amendments. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  First Amendment rights are implicated whenever a state action imposes a barrier to the free exercise of the voting franchise or any First Amendment Right.  That barrier does not have to wholly prevent voters from exercising a First Amendment Right to be found unconstitutional. And "that right is burdened when the state makes it more difficult for these voters to cast ballots." *Molinari v. Bloomberg*, 564 F.3d 587, 604 (2nd Cir. 2009).  The First Amendment "has its fullest and most urgent application" to speech uttered during a campaign for political office.  *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989). Thus any limits on speech in the context of a political campaign is subject to strict scrutiny. *Citizens United v. FEC*, 558 U.S. 50, 130 S. Ct. 876, 882 (2010).

In ballot access cases, the implications of the Equal Protection Clause on the constitutionality of ballot access statutes generally focuses on (a) the disparate treatment of major and minor parties and (b) the disparate treatment of the candidates of parties and independent candidates.  See *Anderson v. Celebrezze*, 460 U.S. 768, 794 (1983).  A burden that falls unequally on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment and equal protection rights under the Fourteenth Amendment. It discriminates against those candidates and – of particular importance – against those voters whose political preferences lie outside the existing political parties. By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduces diversity and competition in the marketplace of ideas.

Ballot access limiting statutes must be considered in the aggregate: "The concept of totality is applicable... in the sense that a number of facially valid provisions of elections laws may operate in tandem to produce impermissible barriers to constitutional rights." *Storer v. Brown*, 415 U.S. 724, 737 (1974). "A court should examine the cumulative burdens imposed by the overall scheme of electoral regulations upon the rights of voters and parties to associate through primary elections." *Clingman v. Beaver*, 544 U.S. 581, 608 (2005).

9

Strict scrutiny applies whenever fundamental rights are implicated.  *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Under the strict scrutiny standard of review, a statue can be upheld only if it is designed to achieve its objective in the least restrictive means.  *Illinois State Br. Of Elections v. Socialist Worker's Party*, 440 U.S. 173, 185 (1979). Strict scrutiny "requires the government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 130 S. Ct. at 882.  And, "the strict scrutiny test is applicable under the Equal Protection Clause to classifications affecting the exercise of fundamental rights."  *Fulani v. Krivanek*, 973 F.2d 1539, 1542 (11th Cir. 1992).  In testing the legitimacy of a State's asserted interest, a court is not required to accept at face value any justification the state may give for its practices. Rather, the court must determine the offered justification is real, and not merely a pre-textual justification for its practices. *Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 315 (3rd Cir. 1999); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006).  Even an otherwise legitimate state concern cannot be accepted without evidence that the problem the state is asserting is real. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008).

10

Therefore, it is insufficient for the state to merely assert a defense, it must present evidence of a real problem that its ballot access limiting statutes seek to address.  In addition to having a legitimate reason for its practice, the state must also show that its practice actually corrects or mitigates the problem that justifies its action.  *Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 315 (3rd Cir. 1999).  There are clearly limits on the State's interests when elections to federal office are involved: "The Framers intended the Elections Clause to grant States authority to create procedural regulations, not to provide States with license to exclude classes of candidates from federal office." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833 (1995).

## CONCLUSION

Accordingly, Defendants' motion for summary judgment should be denied and this Court should grant summary judgment on Plaintiff's facial claims against Sections 8400 and 8403 of the California Election Code.

Dated this 25th day of September, 2017.

/s/ *Paul A. Rossi*

Paul A. Rossi, Esq.
IMPG Advocates, Inc.
316 Hill Street, Mountville, PA  17554
Paul-Rossi@comcast.net
Phone:  717.961.8978
Fax:  717.898.9302

11

## CERTIFICATE OF SERVICE

Plaintiff, by and through his undersigned legal counsel, hereby certifies that on this date, a true and correct copy of the foregoing document has been electronically filed on opposing counsel via the Court's CM/ECF system.

Dated:  September 25, 2017

/s/ *Paul A. Rossi*

Paul A. Rossi, Esq.
IMPG Advocates, Inc.
316 Hill Street
Mountville, PA  17554
Paul-Rossi@comcast.net
Phone:  717.961.8978
Fax:  717.898.9302

12