UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

Case No.  CV-16-3242-MWF (GJS)  Date:  October 4, 2017
Title:  Roque "Rocky" De La Fuente -v- State of California and Alex Padilla

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**  ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT [49]

Before the Court is the Motion for Judgment on the Pleadings or, Alternatively, Summary Judgment, filed by Defendants the State of California and Secretary of State Alex Padilla on May 4, 2017. (Docket No. 49). On June 30, 2017, Plaintiff Roque "Rocky" De La Fuente filed an Opposition, and on July 17, 2017, Defendants filed a Reply. (Docket Nos. 63, 69).

On August 14, 2017, the Court converted Defendants' Motion into a motion for summary judgment and directed Defendants to file a supplemental brief containing citations to the evidentiary record. (Docket No. 73). On August 28, 2017, Defendants filed a Supplemental Brief in further support of their Motion. (Docket No. 76). On September 8, 2017, the Court granted Plaintiff's request to file a Supplemental Brief, and on September 25, 2017, Plaintiff filed a Supplemental Brief in further opposition to the Motion. (Docket Nos. 78, 80). The Court held a hearing on October 2, 2017.

In this action, Plaintiff challenges the constitutionality of sections 8400 and 8403 of the California Elections Code, which govern the number of voter signatures an independent presidential candidate must obtain to gain a place on the general election ballot and time frame in which the candidate must obtain them. These Elections Code provisions do not impose a severe burden on Plaintiff or his supporters and bear a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-16-3242-MWF (GJS)              Date:  October 4, 2017
Title:       Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

reasonable relationship to California's legitimate interests in maintaining an uncluttered and manageable ballot. Accordingly, Defendants' Motion is **GRANTED**.

I.     BACKGROUND

On May 11, 2016, Plaintiff, a candidate running for President of the United States in the 2016 election, commenced this action to challenge the constitutionality of sections 8400 and 8403 of the Elections Code. (Complaint (Docket No. 1) ¶¶ 3, 16–22). On November 3, 2016, Plaintiff filed a First Amended Complaint challenging the same provisions. (FAC (Docket No. 30) ¶¶ 14-16).

Elections Code section 8400 governs the number of registered-voter signatures an independent (non-party) presidential candidate must obtain in order to have his or her name printed on California's ballot. It provides, in pertinent part, that "[n]omination papers for a statewide office for which the candidate is to be nominated shall be signed by voters of the state equal to not less in number than 1 percent of the entire number of registered voters at the time of the close of registration prior to the preceding general election." (FAC ¶ 1); Cal. Elec. Code § 8400. For the 2016 presidential election, an independent presidential candidate needed to submit at least 178,039 valid signatures to satisfy Section 8400's one-percent requirement. (FAC ¶ 2).

Elections Code section 8403 governs the timeframe in which an independent presidential candidate must gather and submit voter signatures. It provides, in pertinent part, that "[f]or offices for which no filing fee is required, nomination papers shall be prepared, circulated, signed, and delivered to the county elections official for examination no earlier than 193 days before the election and no later than 5 p.m. 88 days before the election." Cal. Elec. Code § 8403; (FAC ¶ 3).

Although Plaintiff makes no such allegations in his FAC, in opposition to Defendants' Motion, he states the following with respect to his participation in the 2016 presidential campaign and his plans for the 2020 campaign:

- He qualified for the Democratic primary ballot in 40 states and six territories, including California;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)          **Date:** October 4, 2017
**Title:**     Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

- He placed third in California's Democratic primary, behind Hillary Clinton and Bernie Sanders (the State's official vote count shows that Plaintiff finished fifth (Docket No. 52 at 11));

- Following his Democratic primary losses, he continued to campaign as an independent in all 50 states;

- Though he understood "the importance of the electoral votes in California," and "knew it would be prudent to appear on the general presidential ballot as an independent candidate," he also understood that gathering 178,039 petition signatures "was a cost-prohibitive endeavor";

- With "the understanding that [he] would need to secure up to 200% of the required number of signatures to account for rejected or disqualified signatures, [he] calculated that it would cost [his] campaign between $3-4 million" to gain a place on California's general election ballot as an independent, which "was distinctly cost prohibitive";

- He gathered more than 200,000 signatures nationwide and appeared on 20 states' ballots as an independent candidate;

- He gathered 34,804 signatures in New Mexico; 21,911 in Connecticut; 20,166 in Michigan; 18,753 in North Carolina; 18,001 in Oregon; and 11,491 in Kentucky;

- He spent more than $8,000,000 on his campaign nationwide and more than $500,000 in California, most of which was his own money; and

- He has officially declared his intention to run for President in 2020.

(Declaration of Roque "Rocky" De La Fuente ("De La Fuente Decl.") (Docket No. 63-1) ¶¶ 4-8, 11-13, 18, 19, 21).

      Plaintiff alleges that, in combination, sections 8400 and 8403 violate the First and Fourteenth Amendments by "unduly burden[ing] Plaintiff and depriv[ing] him and

---

**CIVIL MINUTES—GENERAL**          3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)           **Date:** October 4, 2017
**Title:**      Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

those who would vote for him the fundamental right to vote for their candidate in public office." (FAC ¶¶ 1, 13). Plaintiff asks the Court to, among other things, enjoin the continued enforcement of Sections 8400 and 8403. (*Id.* at 6).

## II. LEGAL STANDARD

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50.

---

**CIVIL MINUTES—GENERAL**           4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-16-3242-MWF (GJS)          Date: October 4, 2017
Title:     Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

## III. DISCUSSION

### A. Legal Framework for Challenges to State Election Laws

In *Anderson v. Celebrezze*, the Supreme Court prescribed the following framework to determine the constitutionality of a state law that limits a would-be candidate's ability to have his or her name added to a ballot:

> [A] court must … first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

460 U.S. 780, 789 (1983).

About a decade later, in *Burdick v. Takushi*, the Court added to the *Anderson* test:

> "Under [the *Anderson*] standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to severe restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance. But when a state election law provision imposes only reasonable,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV-16-3242-MWF (GJS)**           **Date:  October 4, 2017**
Title:     Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

> nondiscriminatory restrictions upon First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.

504 U.S. 428, 434 (1992).

The Ninth Circuit has "summarized the Supreme Court's approach as a 'balancing and means-end fit framework.'" *Ariz. Green Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016) (quoting *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (en banc)).  "This is a sliding scale test, where the more severe the burden, the more compelling the state's interest must be…" *Id.*  In *Arizona Green Party*, the Ninth Circuit held that Arizona's statute requiring minor parties to file recognition petitions at least 180 days before the State's primary election imposed only a de minimis burden on the constitutional rights of the minor-party petitioner and its supporters, and that the statute served Arizona's important interests in avoiding voter confusion and maintaining an efficient primary system.  838 F.3d at 991-92.

If an election regulation imposes a "severe burden" on voting rights, "the state must show the law is narrowly tailored to achieve a compelling governmental interest – strict scrutiny review." *Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013) (affirming district court's grant of summary judgment in favor of California's Secretary of State where plaintiffs were challenging legislation that changed "the California election system by eliminating party primaries and general elections with party-nominated candidates, and substituting a nonpartisan primary and a two-candidate runoff"); *accord Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (affirming district court's grant of summary judgment in favor of San Francisco Director of Elections where plaintiffs were challenging city's implementation of "instant runoff voting … to replace [a] two-round runoff").  "Where non-severe, '[l]esser burdens' on voting are at stake, we apply 'less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *Dudum*, 640 F.3d at 1106 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *accord Chamness*, 722 F.3d at 1116 ("Nondiscriminatory restrictions that impose a lesser burden on speech rights need only be reasonably related to achieving the state's important regulatory interests.")

---

**CIVIL MINUTES—GENERAL**           6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV-16-3242-MWF (GJS) | Date:  October 4, 2017 |
| Title:  Roque "Rocky" De La Fuente -v- State of California and Alex Padilla | |

(internal quotation marks and citations omitted).  "[V]oting regulations are rarely subjected to strict scrutiny."  *Dudum*, 640 F.3d at 1106.

### B. The Burden Imposed by Sections 8400 and 8403 is Not Severe

The burden of an election regulation is considered "severe," and thus warrants strict scrutiny, where the regulation "significantly impairs access to the ballot, stifles core political speech, or dictates electoral outcomes."  *Chamness*, 722 F.3d at 1116.  An election regulation will not be deemed "severe," and will thus be subject to less searching scrutiny, where the restriction imposed is "generally applicable, evenhanded, and politically neutral, or if it protects the reliability and integrity of the election process."  *Id.* at 1117; *accord Dudum*, 640 F.3d at 1106.

In their Motion, Defendants argue that sections 8400 and 8403 do not impose a "severe" burden, and are thus subject to "more lenient scrutiny."  (*See* Mot. at 7-16).  As to the applicable level of scrutiny, Plaintiff argues that, while "many cases speak in terms of strict scrutiny or reduced levels of scrutiny…, under any level of scrutiny authorized by the case law, [Defendants] ha[ve] not demonstrated that the statute is Constitutional as a matter of law."  (Opp. at 21).  It is, however, incumbent upon Plaintiff to point to specific facts supporting his contention that sections 8400 and 8403 are unconstitutionally burdensome; it is not the State's burden to marshal evidence negating every displeased citizen's bare contention that a law is unconstitutional.  *See Chamness*, 722 F.3d at 1116 ("We hold that Chamness has failed to establish that [ballot regulation] SB 6 severely burdened his rights, and uphold the constitutionality of the statute…").

Plaintiff does not contend that sections 8400 or 8403 stifle core political speech, dictate electoral outcomes, or are applied non-uniform or in a politically biased fashion.  The crux of his argument is that these Elections Code provisions unduly impair his ability to access California's general election ballot as an independent candidate.  The Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)          **Date:** October 4, 2017
**Title:**     Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

### 1. No evidence of a severe burden on Plaintiff

As an initial matter, Plaintiff has not shown that sections 8400 and 8403 significantly impaired his own ability to access the general election ballot, as impairment implies a causal relationship between the provisions and Plaintiff's non-appearance on the general election ballot. Plaintiff admits that he decided against even attempting to collect signatures in California because he determined that the effort would be "distinctly cost prohibitive." (De La Fuente Decl. ¶ 8) (*see also* Pl. Supp. Br. at 7 ("he refused to spend the estimated $3,000,000 to gain access to California's 2016 general election ballot because it was, on its face, too expensive"). Plaintiff estimated that he "would need to secure up to 200% of the required number of signatures [*i.e.,* 356,078 signatures] to account for rejected or disqualified signatures," while Plaintiff's designated ballot-access expert, Richard Winger, opined that "a prudent candidate will pro-actively gather a cushion of approximately 50% more signatures than required [*i.e.,* 267,058 signatures] because a percentage of signatures is generally disqualified for various reasons…" (*Id.* ¶ 7; Declaration of Richard Winger ("Winger Decl.") (Docket No. 63-3) ¶ 21). Neither Plaintiff nor Winger provide any basis for their opinions regarding the need for this many extra signatures or offer any reasons for the significant divergence between their opinions. "Based upon [his] signature gathering efforts during [his] 2016 campaign," and laboring under the unsupported assumption that he needed to gather twice the required number of signatures, Plaintiff "calculated that [gathering signatures in California] would cost … between $3-4 million." (De La Fuente Decl. ¶ 7).

Plaintiff offers no details about how he arrived at his calculation that gathering signatures in California would cost $3 million to $4 million. The co-chair of the plaintiff-minority party in *Green Party of Ga. v. Kemp*, a recent district court opinion upon which Plaintiff relies heavily, opined that "a paid petitioner charges about $2 per signature, in addition to lodging and travel expenses." 171 F. Supp. 3d 1340, 1349 (N.D. Ga. 2016). Assuming a rate of $2 per signature and assuming, *arguendo*, the reasonableness of Plaintiff's opinion that a candidate should attempt to collect up to two times the number of required signatures, Plaintiff would have needed to spend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV-16-3242-MWF (GJS) | **Date:** October 4, 2017 |
| **Title:** Roque "Rocky" De La Fuente -v- State of California and Alex Padilla | |

$712,156 collecting signatures in California ($2 x 356,072 signatures), not including room and board (if, for some reason, he was unable to hire local signature gatherers).

Richard Winger offers no opinion on the approximate expenditure required for each signature, and Plaintiff does not explain why he believes that a signature in California, a state with many densely populated urban centers, would cost four to five times what it would cost in Georgia. In short, there is no reason that the Court should credit Plaintiff's assertion that it would cost him between $3 million and $4 million to gather a sufficient number of signatures to appear on the 2016 general election ballot.

Moreover, Plaintiff seemingly made no effort to enlist volunteer signature gatherers and/or was unsuccessful in doing so. As Winger testified during his deposition, although 1992 independent presidential candidate Ross Perot spent money opening up offices around the country, he relied primarily upon volunteer signature gatherers to earn a place on general election ballots, including California's. (Transcript of April 7, 2017 Deposition of Richard Winger ("Winger Depo. Tr.") (Docket No. 76-2) at 59-60). Plaintiff contends that he spent more than $500,000 campaigning in California and that, while "[c]ampaigning in California, [he] was featured in excess of 50 television and radio interviews / features." (De La Fuente Decl. ¶ 20). Certainly, if Plaintiff were appealing to California voters, he could have leveraged this money and exposure to enlist at least some volunteer signature gatherers. Although Plaintiff's counsel suggested during the hearing that volunteer signature gatherers should not be considered, the lack of *any* volunteers suggests a candidate without much serious voter support – *i.e.,* precisely who the State is entitled to screen out.

During the 2016 presidential campaign, Plaintiff spent $8,075,959.73 on his campaign, $8,058,834.60 of which consisted of loans from himself, and $17,215.13 of which consisted of individual contributions from others. (*Id.* ¶¶ 10, 18, Ex. 1). This massive disparity suggests that, while Plaintiff was quite enthusiastic about his own campaign, most voters were not.

And, while Plaintiff gained a spot on the general election ballots of 20 states (*Id.* ¶ 11), he did not, by implication, gain a spot on the general election ballots of 30 states. Again, this absence from general election ballots suggests a lack of voter enthusiasm

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV-16-3242-MWF (GJS) | Date: October 4, 2017 |
| Title: | Roque "Rocky" De La Fuente -v- State of California and Alex Padilla | |

not unique to California. "The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson*, 460 U.S. at 788 n. 9. The record suggests that Plaintiff did not enjoy anything close to "substantial support" during the 2016 campaign.

In sum, the evidence in the record indicates that the barriers to Plaintiff's gaining a spot on the general election ballot were a lack of effort, incorrect and internally conflicting budget projections, and, most prominently, a lack of voter interest and enthusiasm, not sections 8400 and 8403. Defendants were under no obligation to provide Plaintiff with an easy path to the general election ballot or to help him overcome the deficiencies in his candidacy. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986) ("States are not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot.").

### 2. No evidence of a severe burden on other candidates

Plaintiff also has not shown that sections 8400 and 8403 have unduly impaired other presidential candidates from accessing California's general election ballot. In the 11 presidential elections since sections 8400 and 8403 were enacted, there have been between five and eight candidates on each general election ballot. (Declaration of Amie Medley ("Medley Decl.") (Docket No. 51) Exs. 7-17; Winger Depo. Tr. at 99:11-99:13). For example, in the 2012 election, there were six candidates from the Democratic, Republican, American Independent, Green, Libertarian, and Peace and Freedom parties on California's general election ballot. (Medley Decl. Ex. 16). Most recently, in the 2016 election, there were five candidates from each of those parties (President Trump was listed as both the Republican and American Independent candidate) on the general election ballot. (Medley Decl. Ex. 17). During the hearing, Plaintiff's counsel acknowledged that "California allows more candidates onto the ballot than many other states."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)          **Date:** October 4, 2017
**Title:**     Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

      Both in his briefing and during the hearing, Plaintiff has urged the Court to focus solely on the number of *independent* candidates that have appeared on recent general election ballots and to ignore the overall number of major- and minor-party candidates that have successfully accessed the general-election ballot under the current election-law regime. (*See, e.g.,* Opp. at 21 ("the proper scope of inquiry is the burden placed on a candidate seeking ballot access by a particular means (i.e., as an independent candidate).")). But focusing solely on independent candidates – rather than major-party, minor-party, and independent candidates – is contrary to recent Ninth Circuit authority, which provides that courts "'must examine the entire scheme regulating ballot access.'" *Ariz. Libertarian Party*, 798 F.3d at 730 (quoting *Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010)).

      During the hearing, Plaintiff's counsel invoked *Anderson* to argue that sections 8400 and 8403 reflect some level of animus towards independent candidates. In *Anderson*, the Supreme Court struck down an Ohio law that required independent presidential candidates to file a statement of candidacy 75 days before the state held its party primary elections; in effect, this prevented candidates from making any serious effort to win a party primary and then, if unsuccessful, running in the general election as an independent. *See Anderson*, 460 U.S. at 806. It also prevented all independent candidates (whether they ran in a primary or not) from waiting to see what happens in the party primaries before deciding whether to run as an independent. *See id.* at 799. Ohio's "early filing deadline … discriminate[d] against independents." *Id.* at 804. Here, Plaintiff ran in the Democratic primary and, after he lost, still had time to try to secure a spot on the general election ballot as an independent; he just chose not to. Also, Plaintiff acknowledges that "California's statute for obtaining ballot access by forming a new qualified party is even more onerous" than sections 8400 and 8403(Opp. at 30), so there is no discrimination against independent candidates vis-à-vis partisan candidates. Despite its emphasis on independent candidates, *Anderson* is not supportive of Plaintiff's position.

      In the 11 elections that have taken place since sections 8400 and 8403 were enacted, six independent candidates have appeared on California's general election ballots. (Medley Decl. Exs. 7-11). Plaintiff makes much of the fact that the most

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)          **Date:** October 4, 2017
**Title:** Roque "Rocky" De La Fuente -v- State of California and Alex Padilla

recent independent candidate to appear on California's general election ballot was Ross Perot, in the 1992 election, but does not explain why the Court should not look beyond 1992 or what, if anything, changed post-1992 that made it less likely for an independent candidate to gain a place on the ballot.

During his deposition, Winger offered a logical reason for the lack of independent candidates on the ballot in more recent elections that is unrelated to the allegedly excessive burdens imposed by sections 8400 and 8403: "Because California has these minor parties [o]n the ballot, that kind of -- there's almost nobody left to petition." (Winger Depo. Tr. at 100:1-100:3). In other words, presidential candidates who might otherwise garner enough support to run as independents are opting to affiliate with lesser-known parties. Where California voters are consistently able to vote for candidates outside of the two major parties, California has no constitutional obligation to counteract the trend toward minor-party affiliation by lowering the barriers for independent candidates.

California's general election situation is a far cry from the situation in *Green Party of Georgia*, the main case on which Plaintiff relies to argue that a one-percent signature requirement may be unconstitutionally burdensome. The district court in *Green Party of Georgia* paid particular attention to the fact that Georgia's one-percent signature requirement and timing requirements led to a consistent dearth of presidential candidates from outside of the Democratic and Republican parties, even when certain third-party or independent candidates, such as Ralph Nader, were successful in gaining spots on the ballots of almost every other state. The district court noted that "[s]ince the passage of Georgia's current code section in 1986, Ross Perot qualified as an independent presidential candidate in 1992 and 1996, as did Pat Buchanan in 2000," but that no other " 'minor party' … has qualified a presidential candidate for ballot access by petition since Mr. Buchanan in 2000." *Green Party of Ga.*, 171 F. Supp. 3d at 1348. This absence meant that "[t]he voters of Georgia [did] not have the political choice available to citizens in other states." *Id.* at 1363. Whereas Georgia's one-percent and timing requirements led to a severe constriction of voter choice vis-à-vis other states, California's one-percent and timing requirements have not. As Winger, Plaintiff's ballot-access expert, noted during his deposition, the Constitution and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)           **Date:** October 4, 2017
**Title:**    Roque "Rocky" De La Fuente -v- State of California and Alex Padilla

Marxist parties "are about the only minor parties left that aren't on the ballot in California presidential elections." (Winger Depo. Tr. at 100:23-100:25).

Finally, California's signature-gathering requirements are not objectively unreasonable or far outside of the mainstream. California's requirement that an independent candidate obtain signatures from one percent of the electorate is in line with the requirements in other states. (*See* Medley Decl. Ex. 4) (summarizing signature requirements by percentage of registered or prior-election voters in other states, including: 3% in Arizona, New Mexico and Oklahoma; 2% in Indiana, North Carolina, Pennsylvania, and Wyoming; and 1% in Delaware, Florida, Hawaii, Maryland, Minnesota, Nevada, and Oregon). And the raw number of signatures an independent candidate would need to collect to appear on the general election ballot is not unreasonable given California's status as the most populous state with the largest number of Electoral College votes.

Accepting as true Winger's opinion that a prudent candidate should gather 150% of the required number of signatures to account for disqualification of some of those signatures, in order to appear on the 2016 general election ballot, Plaintiff would have needed to gather 267,058 signatures in the 105-day window provided by section 8403. The Supreme Court has viewed substantially more arduous signature-gathering requirements as within the realm of reason for someone who hopes to ascend to the Presidency. *See Storer v. Brown*, 415 U.S. 724, 740 (1974) (noting that "gathering 325,000 signatures in 24 days would not appear to be an impossible burden" or "an impractical undertaking for one who desires to be a candidate for President.").

In sum, sections 8400 and 8403 do not impose a severe burden on Plaintiff or anyone else hoping to gain a place on the general election ballot as an independent presidential candidate.

### C. Sections 8400 and 8403 are Reasonably Related to California's Important Regulatory Interests

In light of the fact that sections 8400 and 8403 do not impose a severe burden on those hoping to gain a place on California's general election ballot, they are subject to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-16-3242-MWF (GJS)					Date:  October 4, 2017
Title:	Roque "Rocky" De La Fuente -v- State of California and Alex Padilla

less exacting scrutiny, meaning that they "need only be reasonably related to achieving the state's important regulatory interests." *Chamness*, 722 F.3d at 1116; *Cf. Dudum*, 640 F.3d at 1106.  Defendants have identified those interests as, *inter alia*, keeping the ballot within manageable limits, avoiding ballot overcrowding, and avoiding voter confusion.  (*See* Mot. at 16; Reply at 9).  These governmental interests have consistently been recognized as important.  *See, e.g., Bullock v. Carter*, 405 U.S. 134, 145 (1972); *Munro*, 479 U.S. at 194-95.

  Plaintiff incorrectly suggests that California must garner evidence of actual ballot overcrowding and voter confusion to justify sections 8400 and 8403.  (*See* Pl. Supp. Br. at 11) ("[I]t is insufficient for the state to merely assert a defense[;] it must present evidence of a real problem that its ballot access limiting statutes seek to address.  In addition to having a legitimate reason for its practice, the state must also show that its practice actually corrects or mitigates the problem that justifies its action.")). That is not correct.  California may invoke those interests generally and does not need to "prove actual voter confusion, ballot overcrowding, or the presence of frivolous candidates as a predicate to the imposition of reasonable ballot access restrictions"; it need not "sustain some level of damage before the legislature [can] take corrective action."  *Munro*, 479 U.S. at 195.

  Plaintiff's attempt to challenge the relationship between sections 8400 and 8403 and California's important interests consists of little more than Winger's opinion that the State could avoid ballot overcrowding and voter confusion by requiring independent candidates to obtain something more than 5,000 signatures and something less than 1% of eligible voters' signatures.  (*See* Pl. Supp. Br. at 6 ("Richard Winger's expert testimony that states with a 5,000 election petition signature requirement have not experienced 'ballot clutter' and the alleged associated risk of 'voter confusion' is left uncontested in this case.").

  During the hearing, Plaintiff's counsel argued that Defendants failed to "refute" Winger's opinion that most states can avoid "ballot clutter" with something around a 5,000-signature requirement.  Plaintiff misapprehends the nature of the Court's examination.  Under the less searching scrutiny that non-severe ballot-access restrictions (like California's) receive, California's one-percent requirement does not

**CIVIL MINUTES—GENERAL**              14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-16-3242-MWF (GJS)          **Date:** October 4, 2017
**Title:**   Roque "Rocky" De La Fuente -*v*- State of California and Alex Padilla

need to be the best way to avoid ballot overcrowding or even a particularly good way to avoid ballot overcrowding; it just needs to be a reasonable way to avoid ballot overcrowding.

Perhaps the strongest evidence that sections 8400 and 8403 are reasonably related to California's interest in avoiding ballot overcrowding is that in each election year since their enactment, California voters have enjoyed a relatively broad choice of presidential candidates. According to Plaintiff, "California's statute for obtaining ballot access by forming a new qualified party is even more onerous tha[n] the statutory scheme challenged by Mr. De La Fuente." (Opp. at 30). Even under this "more onerous" path to the ballot for partisan candidates (*i.e.*, win an existing-party primary or form a new party), California has had between five and eight presidential candidates on each of the last 11 general election ballots. The fact that this many candidates, from both major and minor parties, have been able to consistently access the general election ballot under these more onerous requirements bolsters Defendants' position that section 8400's one-percent signature requirement is reasonably related to its important interests in maintaining a manageable and comprehendible ballot. Plaintiff has offered no evidence to suggest that the relationship between sections 8400 and 8403 and California's legitimate interests is unreasonable.

Plaintiff's argument, ultimately, is that candidates who lack a modicum of voter support should be able to force their way onto an already full and diverse general election ballot and then attempt to gather supporters later. Common sense and legal precedent say that this argument is unavailing.

Accordingly, Defendants' Motion is **GRANTED** and the action is **DISMISSED**.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment. Local Rule 58-6.

IT IS SO ORDERED.