**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROQUE DE LA FUENTE, AKA Rocky, | No. 17-56668 |
| *Plaintiff-Appellant*, | D.C. No. 2:16-cv-03242-MWF-GJS |
| v. | |
| ALEX PADILLA, California Secretary of State; STATE OF CALIFORNIA, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted March 12, 2019
San Francisco, California

Filed July 19, 2019

Before:  J. Clifford Wallace, A. Wallace Tashima, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal of an action brought by independent presidential candidate Roque De La Fuente challenging two California ballot access laws, Cal. Elec. Code §§ 8400, 8403, which require independent candidates to collect signatures from one percent of California's registered voters—over 170,000 signatures—to appear on a statewide ballot.

The panel first held that De La Fuente had standing because he suffered a concrete injury that was not merely speculative. The panel noted that De La Fuente's declaration confirmed that he is running for President of the United States in 2020.

Applying the balancing framework in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), the panel held that California's overall scheme does not significantly impair ballot access. The panel stated that Sections 8400 and 8403 were generally applicable, even-handed, politically neutral, and aimed at protecting the reliability and integrity of the election process. The panel concluded that the ballot access laws reasonably related to California's important regulatory interests in managing its democratic process and were proportionate to California's large voter population.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Paul A. Rossi (argued), Mountville, Pennsylvania, for Plaintiff-Appellant.

Jonathan M. Eisenberg (argued), Deputy Attorney General; Xavier Becerra, Attorney General of California; Thomas S. Patterson, Senior Assistant Attorney General; Stepan A. Haytayan, Supervising Deputy Attorney General; Office of the California Attorney General, Los Angeles, California; for Defendants-Appellees.

**OPINION**

McKEOWN, Circuit Judge

We examine yet another state's regulation of ballot access as we consider a challenge to ballot qualification laws in California, the country's most populous state.  *See, e.g.*, *Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085 (9th Cir. 2019) (addressing Arizona ballot regulations).  Together, two California ballot access laws require independent candidates to collect signatures from one percent of California's registered voters—over 170,000 signatures—to appear on a statewide ballot.  Independent presidential candidate Roque De La Fuente challenges these requirements as unconstitutional.

After losing the 2016 Democratic presidential primary in California, De La Fuente wanted to continue his candidacy in the general election as an independent candidate.  But he faced what he argues is a "cost prohibitive" obstacle: sections 8400 and 8403 of California's ballot access laws (collectively, "Ballot Access Laws").  Cal. Elec. Code §§ 8400, 8403.  Under section 8400, independent candidates

running for statewide office must collect signatures from one percent of all registered voters. *Id.* § 8400 (requiring independent candidates to collect signatures from "voters of the state equal to not less in number than 1 percent of the entire number of registered voters of the state at the time of the close of registration prior to the preceding general election"). Section 8403 requires independent candidates to collect the signatures at least 88, but no more than 193, days before the election. *Id.* § 8403(a). So, in 2016, De La Fuente had to collect 178,039 valid signatures in 105 days to appear on the general election ballot.

Assuming he needed paid canvassers and twice as many signatures to ensure a comfortable margin of error, De La Fuente estimated the cost of ballot access to be three to four million dollars. He argues that such an expense makes running statewide "cost prohibitive," unconstitutionally burdening rights guaranteed by the First and Fourteenth Amendments. De La Fuente points out that the next highest state signature requirement is about 60,000 fewer (in Florida) and that no independent candidate has appeared on California's general election ballot since 1992. De La Fuente self-funds his campaigns, and has officially declared his 2020 presidential run.

California's Secretary of State (the "Secretary") contends that the Ballot Access Laws are reasonably related to California's regulatory interests—streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion. Following a hearing, the district court granted the Secretary's motion for summary judgment and dismissed the case.

## ANALYSIS

We review de novo De La Fuente's constitutional challenge. *Nader v. Cronin*, 620 F.3d 1214, 1216 (9th Cir. 2010). But first we address De La Fuente's standing. To have Article III standing, a party must suffer an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The "injury in fact" inquiry focuses on "whether the party invoking jurisdiction had the requisite stake in the outcome," although the injury "need not be actualized." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

De La Fuente has suffered a concrete injury that is not merely speculative. De La Fuente's declaration confirms that he is running for President of the United States in 2020. Whether he will run as an independent or in a major political party's primary, as the Secretary argues, does not affect his injury. Either path is all but certain to lead to De La Fuente running as an independent in the general election. As many well-known and not so well-known candidates know, running in a party's presidential primary is no guarantee of running as that party's general election candidate. De La Fuente's experience in 2016 reflects this reality. After De La Fuente ran (and lost) in the Democratic primary election, the only way he could appear on California's presidential general election ballot was to run as an independent. It is likely that if De La Fuente runs in the 2020 Democratic primary, history will repeat itself. Whichever path De La Fuente chooses, he will suffer an "injury in fact." He therefore has standing. *Cf. Ariz. Green Party v. Reagan*, 838 F.3d 983, 987–88 (9th Cir. 2016).

We therefore proceed to the merits of De La Fuente's challenge.  To trigger strict scrutiny of the Ballot Access Laws, De La Fuente must first show that they "seriously restrict the availability of political opportunity." Ariz. Green Party, 838 F.3d at 989 (citing *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 762 (9th Cir. 1994)).  This is because the "evidence that the burden is severe, de minimis, or something in between, sets the stage for the analysis by determining how compelling the state's interest must be to justify the law in question." *Id*. at 985.

We evaluate challenges to ballot access laws under the First and Fourteenth Amendments using the balancing framework in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).  *See Ariz. Libertarian Party*, 925 F.3d at 1090.  The balancing framework is a "'sliding scale'—the more severe the burden imposed, the more exacting our scrutiny; the less severe, the more relaxed our scrutiny." *Id*. (citing *Ariz. Green Party*, 838 F.3d at 988).  Under this "flexible standard,"

> [a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id*. (internal citations and quotation marks omitted).  In short, a state must narrowly tailor its law to advance "compelling" interests if the burden on First Amendment rights is severe,

*Norman v. Reed*, 502 U.S. 279, 289 (1992), but, if the burden is minimal, the law only needs to reasonably advance "important" interests, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

Although De La Fuente argues that his individual burden is severe because *he* might not appear on the ballot, California's overall scheme does not significantly impair ballot access. *See Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 730 (9th Cir. 2015) ("[Courts] must examine the entire scheme regulating ballot access." (quoting *Cronin*, 620 F.3d at 1217)). Non-major party candidates can access California's ballot in three ways: as minor party candidates, write-in candidates, or independent candidates. Although the last independent candidate appeared on California's general election ballot in 1992, minor party candidates have consistently appeared alongside major party candidates. De La Fuente's own expert suggested that "there's almost nobody left [for independent candidates] to petition" because voters have their choice among major and minor party candidates. Not only do these choices reduce a voter's need for independent candidates, they cut against De La Fuente's assertion that the Ballot Access Laws "seriously restrict the availability of political opportunity." *Nader*, 620 F.3d at 1217–18 (quoting *Munro*, 31 F.3d at 761–62). The inclusion of minor party candidates also distinguishes this case from others where courts have applied strict scrutiny. *See, e.g.*, *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340, 1363 (N.D. Ga. 2016) (applying strict scrutiny when "the restrictions at issue in this case serve to prevent minor parties from engaging in the fundamental political activity of placing their candidate on the general election ballot"); *cf. Williams v. Rhodes*, 393 U.S. 23, 31 (1968) ("[T]he right to vote is heavily burdened if that vote may be cast only for one

8                     DE LA FUENTE V. PADILLA

of two parties at a time when other parties are clamoring for a place on the ballot.").

A plain reading of both the statutes and the record supports the conclusion that sections 8400 and 8403 are "'not severe' restrictions." *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (quoting *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002)). Sections 8400 and 8403 are "generally applicable, even-handed, politically neutral," and aimed at protecting the reliability and integrity of the election process. *Id.*; *see* Cal. Elec. Code §§ 8400, 8403. Because the Ballot Access Laws do not severely burden any constitutional rights, we analyze these laws under a less exacting standard. *See Dudum*, 640 F.3d at 1106 ("Where non-severe, lesser burdens on voting are at stake, we apply less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." (internal alterations and quotations marks omitted)).

The Supreme Court has long recognized the "important state interest in requiring some preliminary showing of a significant modicum of support" and "in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). California's ballot regulations seek to protect its "important regulatory interests," *Burdick*, 504 U.S. at 434, in streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion. California is not required "to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro v. Socialist Workers Party*, 479 U.S. 189, 194–95 (1986)).

The right to access the ballot is important to voters, candidates, and political parties alike, but it must be balanced against California's need to manage its democratic process. *See Burdick*, 504 U.S. at 441. Although the number of signatures the Ballot Access Laws require may appear high, it accounts for only one percent of California's voter pool, the largest in the country. This low percentage threshold prevents candidates without established support from appearing on the ballot—satisfying California's interests—without "seriously restrict[ing] the availability of political opportunity." *Ariz. Green Party*, 838 F.3d at 989 (quoting *Munro*, 31 F.3d at 762). These laws are also consistent with other ballot access schemes deemed constitutional. *See, e.g.*, *Storer v. Brown*, 415 U.S 724, 740 (1974) ("Standing alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden [and] . . . would not appear to require an impractical undertaking for one who desires to be a candidate for President."); *Jenness*, 403 U.S. at 442 (upholding law requiring independent candidates to gather signatures equivalent to five percent of the number of registered voters in the previous presidential election); *Nader*, 620 F.3d at 1217 (concluding the burden of collecting signatures equivalent to one percent of the state's voters in the previous presidential election was low).

The Ballot Access Laws reasonably relate to California's important regulatory interests in managing its democratic process and are proportionate to California's large voter population. *See Burdick*, 504 U.S. at 441. California has no constitutional obligation "to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." *See Munro*, 479

U.S. at 198.  We affirm the district court's dismissal of the case.

**AFFIRMED.**